Genevieve DeLeon URANGA, Appellant,

v.

C. V. URANGA, Appellee.

No. 15327.

Court of Civil Appeals of Texas, San Antonio.

Feb. 12, 1975.

Rehearing Denied Oct. 1, 1975.

Pat Maloney, San Antonio, for appellant.

V. F. Knickerbocker & Associates, Eagle Pass, for appellee.

CADENA, Justice.

This is a divorce case in which appellant, Genevieve DeLeon Uranga, complains only of the property disposition portions of the judgment below. In this opinion appellant will be referred to as "wife," while appellee, C. V. Uranga, will be designated "husband."

The trial court held that the only community property accumulated by the parties was money on deposit in a bank in the amount of $5,260.59. $5,000.00 of this was awarded to wife and $260.59 to husband. The judgment further recited that all assets shown on a balance sheet reflecting husband's financial position as of May 31, 1973, nine months before the trial, were husband's separate property.

The parties were married in April, 1972, and the evidence supports the conclusion that they lived together as husband and wife for only a few months. The trial of the divorce case began on October 8, 1973, and the divorce decree was signed on November 30, 1973.

Wife first contends that the trial court erred in permitting proof concerning the alleged separate nature of the property awarded to husband because there were no pleadings to support the introduction of such evidence.

We are familiar with cases containing statements to the effect that a spouse claiming that property on hand at the time of the dissolution of the marriage is his separate property should plead such fact fully, including the basis for such claim. See, e. g., Bobbitt v. Bobbitt, 223 S.W. 478, 485 (Tex.Civ.App.—Amarillo 1920, writ dism'd). In this case, husband's petition for divorce alleged that there was no community estate "other than personal effects, which should be awarded to the person having possession." In her answer, wife alleged that the parties owned separate and community property, but that because of

the "extent and complexity and commingling of the properties of the parties . . it is proper and just that an auditor be appointed" to determine the nature of the properties on hand.

Wife's pleadings clearly disclose the existence of separate property. Without her determining whether statements such as that found in *Bobbitt* are correct expressions of the law,[1] we hold that the reference in wife's pleadings to the existence of separate property and her prayer that the property rights of the parties be determined were adequate to support the introduction of evidence as to the character and nature of the property so that the trial court might intelligently perform the duty imposed upon it by § 3.63, Tex.Family Code Ann., to partition the property in such manner as he may consider just and right under the circumstances. *Schreiner v. Schreiner,* 502 S.W.2d 840 (Tex.Civ.App.—San Antonio 1973, writ dism'd); *Cox v. Cox,* 439 S.W.2d 862 (Tex.Civ.App.—San Antonio 1969, no writ).

In any event, wife failed to object to the introduction of the evidence offered by husband in support of his claim of separate right in the property in question. We know of no reason why the doctrine of trial by implied consent of an issue not raised by the pleadings should not be applied here to bar wife's complaint. Rules 45, 46 and 67, Tex.R.Civ.P. (1967); *Zimmerman v. Zimmerman,* 348 S.W.2d 239 (Tex.Civ.App.—San Antonio 1961, no writ).

■ Wife next contends that the trial court used an incorrect method in determining the extent of the community estate of the parties. She contends that the trial court based its determination solely on evidence to the effect that husband's net worth as of May 31, 1973, some four months prior to the trial, was less than his net worth as of December 31, 1971, about five months prior to the marriage. Wife cor-

rectly argues that this "before and after" method of determining the extent of the community estate is incorrect and that such showing by husband is insufficient to overcome the presumption established by § 5.02 of the Family Code that all property possessed by either spouse on dissolution of the marriage is community property. *In re Marriage of Greer,* 483 S.W.2d 490 (Tex.Civ.App.—Amarillo 1972, writ dism'd). However, in addition to the testimony concerning the net worth of husband as of December 31, 1971, and May 31, 1973, there is the testimony of W. E. Cook, a certified public accountant who had kept husband's books and records for 15 years preceding the divorce action, who testified that all of the assets owned by husband as of May 31, 1973, could be traced back to the assets owned by him on December 31, 1971. We must, therefore, consider the sufficiency of all of the evidence to support the trial court's finding since wife also contends that the evidence is insufficient to support the finding that all assets on hand at the time of the dissolution of the marriage, except the money in the bank, comprised the separate estate of the husband.

Our task of evaluating the evidence is not made easier by the fact that the exhibits which have been brought before us do not coincide with the exhibits which formed the basis for Cook's testimony. At the trial, Cook identified two exhibits which were referred to as husband's exhibits 1 and 2. He identified exhibit 1 as being a balance sheet reflecting husband's financial condition as of May 31, 1973, four months before trial. This corresponds to exhibit 1 which is contained in the record brought forward to this court. Cook identified exhibit 2 as being a balance sheet showing the financial position of husband as of December 31, 1971, about five months before the marriage. However, the document which appears in the record before us as husband's exhibit 2 is a balance sheet purporting to

1. Cf. *Zaruba v. Zaruba,* 498 S.W.2d 695 (Tex.Civ.App.—Corpus Christi 1973, err. dism.).

reflect husband's financial condition as of December 31, 1972, ten months after the marriage, rather than December 31, 1971, five months before the marriage. Although it is obvious that much of Cook's testimony relates to husband's financial position as reflected by a balance sheet reflecting such position as of December 31, 1971, no such balance sheet is before us. None of Cook's testimony relates to the balance sheet showing husband's assets and liabilities as of December 31, 1972. It cannot be said that Cook in identifying exhibit 2 as the December 31, 1971, balance sheet, was guilty of only a slip of the tongue and meant to identify the exhibit as the December 31, 1972, balance sheet, since the figures which form the basis of his testimony obviously are based on the assumption that exhibit 2 was the 1971 balance sheet, and the figures which he used do not coincide with the figures reflected in the exhibit 2 (balance sheet as of December 31, 1972) which is before us.

Cook's testimony was to the effect that as of December 31, 1971, husband's net worth, as reflected by what he labeled "exhibit 2," was $596,373.80. The document marked "exhibit 2" which is before us shows that as of December 31, 1972, husband's net worth was $414,137.73. Cook then testified that, as reflected by exhibit 1, the balance sheet of May 31, 1973, husband's net worth was $577,896.86, a decrease in net worth in five months of $18,476.94. Thus, the exhibits which we have before us show that during the year 1972 husband's net worth decreased by $182,236.07, and there is nothing in the record to indicate what portion of this decrease occurred in the four months of 1972 preceding the marriage, and what portion occurred in the eight months of 1972 during which the parties were married. By May 31, 1973, there had been an increase in net worth of $163,759.13 over the December 31, 1972, figure. This increase, although it represents a net worth $18,476.94 less than that as of December 31, 1971, occurred while the parties were man and wife. Under these circumstances, it is impossible to say whether or not the husband's net worth increased or decreased during the marriage.

■ The evidence discloses that during the marriage husband received income in the form of salary, dividends and rents which must be classified as community property. 1 Speer, Marital Rights in Texas §§ 416, 422, 427 (4th ed., Oakes, 1961). Husband's 1972 income tax return shows receipt of $26,000.00 in salary, $16,104.60 in dividends, $34,798.24 in rentals and $665.22 as "miscellaneous income," or a total income of $77,568.06. Against the rental income, husband offset, for tax purposes, "expenses" of $69,841.71, including interest in the sum of $29,743.56, ad valorem taxes in the sum of $14,848.70, labor in the amount of $6,691.04 and depreciation in the sum of $9,165.32, to show a net loss on his rental properties of $34,378.25. The record discloses no information concerning husband's net income during the first nine months of 1973, except that there is evidence to the effect that he received a salary of $500.00 a week.

All of the testimony, including the balance sheet, relates to husband's financial condition as an individual. The record discloses that a substantial portion of his business was transacted through a corporation, Eagle Oil Co., in which he owns 99½% of the stock and of which he is president. There is no evidence concerning the financial position of this corporation except for the accountant's statement to the effect that Eagle Oil Co. operated at a loss during 1972, and husband's statement to the effect that Eagle Oil Co. had never declared a dividend. However, the record discloses that as of May 31, 1973, husband owed Eagle Oil Co. $330,668.45, representing money which he had "borrowed" from the corporation. According to the December 31, 1972, balance sheet, husband owed the corporation $309,606.22. According to the accountant's testimony, as of December 31, 1971, husband owed the corporation $267,000.00. The increase is unexplained.

The evidence reveals that during the time the parties were married husband borrowed $145,000.00 for the purpose of constructing an apartment complex on his separate realty. The nature of this loan transaction is completely unexplained, and since money borrowed during marriage is presumed to be community property, it must be concluded that the $145,000.00 which husband invested in improving his separate realty was community property. 1 Speer, *op. cit.* § 440. It must also be concluded that at least a portion of the apartment complex is completed and occupied, since a woman who accompanied husband on a trip to the Bahama Islands and has accompanied him on various social occasions lives in one of the apartments. Husband testified that this woman pays no rent for the apartment which she occupies because she cooks his meals. There is no testimony relating to the rental received by husband from the apartments, nor is there any testimony relating to the value of the services received by husband from the tenant who cooks for him in lieu of paying rent.

In view of the fact that husband's business affairs, to a substantial extent, are conducted through a corporation which must be presumed to be his alter ego, and in the absence of testimony concerning the financial condition of the corporation, aside from the statement that it operated at a loss, despite the fact that husband had borrowed in excess of $330,000.00 from it, we cannot say that the record supports the conclusion that the husband's interest in the corporation, although acquired by him before marriage, was his separate property. *Dillingham v. Dillingham,* 434 S.W.2d 459 (Tex.Civ.App.—Fort Worth 1968, writ dism'd); *Mea v. Mea,* 464 S.W.2d 201 (Tex. Civ.App.—Tyler 1971, no writ). This is particularly true in view of the fact that the record establishes that husband kept only one checking account and his admission that part of his salary was used for the purpose of defraying the corporation's operating expenses.

It is also clear from the judgment that the trial court did not consider the fact that, under the state of the record, $145,-000.00 of community funds had been used by husband for the improvement of his separate realty.

While we conclude that the trial court erred in evaluating the extent of the community estate, we believe that the interests of justice would be better served if the case were remanded for further proceedings so that evidence developing the true nature of the various assets may be presented to the court.

Since neither party complains of the portion of the judgment dissolving the marriage, that portion of the judgment is affirmed. Insofar as the judgment determines the property rights of the parties, it is reversed and that portion of the cause is remanded to the trial court for further proceedings.