**Norma Jean HENRY, Appellant,**

v.

**Ian Francis HENRY, Appellee.**

No. 14–98–01032–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 7, 2001.

Brooks Lee Bass, Alvin, Kelly McClendon, Angleton, for appellants.

Gregory Guy Funderburk, Houston, for appellees.

Panel consists of Justices SEARS, DRAUGHN, and LEE.*

## OPINION

NORMAN LEE, Justice (Assigned).

Norma Jean Henry appeals from a trial court judgment granting divorce on the ground of her cruel treatment of her husband, Ian Francis Henry. In three points of error, Norma challenges: (1) the sufficiency of the evidence to support the finding of cruel treatment; (2) the division of the community estate; and (3) the assessment of attorney's fees against her. We will affirm the parts of the judgment regarding cruel treatment and attorney's fees (to the extent based on a suit affecting the parent-child relationship), and we will reverse and remand for a new division of the property.

### I. Marital History

Ian and Norma were married on June 30, 1990. The couple resided in Red Deer, Canada, and Ian worked as a millwright

---

* Senior Justices Ross A. Sears, Joe L. Draughn, and Norman Lee sitting by assignment.

for Nova, where he had worked for the nine previous years. Norma was working part-time as a nurse while going to school to become a registered nurse. The couple's first child, Aaron, was born on July 14, 1991, and a second son, Dillon, was born on December 28, 1992.

In 1994, Ian learned that his employer was downsizing and that he would be eligible for a severance package. The couple then began looking to move. Norma found a job with a hospital in Corpus Christi and moved to Texas in May of 1995. Ian stayed in Canada with the children for nine more weeks in order to sell the house and complete his employment. For the next year, Norma worked the night shift at the hospital, and Ian was unemployed. The first of four marital separations occurred in late December of 1995.

In August 1996, the family moved to League City. Ian began working for Brown and Root, and Norma began working for Vitas. A second marital separation occurred in November 1996 and a third in January 1997. In March 1997, Ian began working a fourteen day on/ fourteen day off schedule for Shell Offshore. A fourth separation began on April 8, 1997, and Ian filed for divorce on April 16.

On January 19, 1998, Ian and Norma entered into a mediated settlement agreement, which purported to resolve all issues relating to the children and the division of property except for the disposition of three accounts and the couple's vehicles. After a two day trial, the trial court granted divorce on the ground of cruel treatment as pled by Ian. The court also awarded a majority of the three accounts to Ian, granted certain reimbursement claims in his favor, and ordered Norma to pay Ian's attorney's fees.

## II. Cruel Treatment

■■■ Norma first challenges the sufficiency of the evidence to support the trial court's finding of cruel treatment. Findings of fact in a bench trial have the same force and dignity as a jury verdict; thus an appellate court reviews sufficiency challenges to findings of fact by the same standards as apply in reviewing a jury's findings. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). In reviewing for legal sufficiency, we consider only the evidence and inferences supporting the finding and disregard all evidence and inferences to the contrary. *Minnesota Mining and Mfg. Co. v. Nishika Ltd.,* 953 S.W.2d 733, 738 (Tex.1997). If more than a scintilla of probative evidence supports the finding, the no evidence challenge fails. *Id.* More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997), *cert. denied,* 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). In reviewing for factual sufficiency, we weigh all of the evidence in the record and overturn the finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996).

■■■ Although seldom used since the advent of no-fault divorce, it is still possible for a court to grant a divorce on the ground of cruel treatment. *See* TEX. FAM. CODE ANN. § 6.002 (Vernon 1998). To constitute cruel treatment, the conduct of the accused party must rise to such a level as to render the couple's living together insupportable. *Id.; Finn v. Finn,* 185 S.W.2d 579, 582 (Tex.Civ.App.—Dallas 1945, no writ). "Insupportable" in this context means "incapable of being borne, unendurable, insufferable, intolerable."

*Cantwell v. Cantwell,* 217 S.W.2d 450, 453 (Tex.Civ.App.—El Paso 1948, writ. dism'd). Mere trivial matters or disagreements do not justify the granting of divorce for cruel treatment. *Shankles v. Shankles,* 445 S.W.2d 803, 807 (Tex.Civ. App.—Waco 1969, no writ). *See also Golden v. Golden,* 238 S.W.2d 619, 621 (Tex.Civ.App.—Waco 1951, no writ)(complaining spouse suffered only some nervousness and embarrassment). Acts occurring after separation can support a finding of cruel treatment. *Redwine v. Redwine,* 198 S.W.2d 472, 473 (Tex.Civ. App.—Amarillo 1946, no writ).

## A. Legal Sufficiency

We first examine the record for the legal sufficiency of the evidence concerning cruel treatment, considering only evidence and inferences that support the finding. *See Minnesota Mining,* 953 S.W.2d at 738. Ian claims that after the move to Texas, Norma underwent a lifestyle change and began going out with a group of single girls from work. He further stated that at times she made him feel excluded from family and social activities, including when she took one of the children on a yacht owned by a single male doctor friend and when she joined a volleyball club but did not invite him to join. Ian further complains that Norma took a vacation back to Canada with the children at a time when he could not go because he had just started a new job.

Ian testified that each of the four separations was instigated by Norma and that she never told him why she wanted him out of the house; she just told him to go. He attended marriage counseling without her and could only get her to go one time. During the fourth separation, the couple alternated who stayed in the apartment with the children, and Ian testified that Norma abandoned the family for eight days and refused to say where she was staying.

Ian stated that, after he filed for divorce, he got an apartment next door to the one where Norma and the children lived. He said that the lease was about to expire on the old apartment, and Norma invited him over for coffee one night, seduced him, and asked him if she and the children could move in with him. He assented. He then went to work offshore for two weeks, thinking they had reconciled, but when he returned she had moved most of their things out of the new apartment, and she told him she wanted to go through with the divorce.

Ian further testified that, after the divorce was filed, whenever he went to pick up the children for visitation, they were dressed in dirty or torn clothes, and Norma would not give him things for the children that he had requested and she had agreed to give. Also, when he went to pick up his personal property pursuant to the settlement agreement, he found the items sitting in a flower bed, and several things were missing. They arranged to exchange a bookcase, which had been missing from the first exchange, and when he went to pick it up, he found it face down on the road.

Ian's testimony presented evidence on which the court could have reasonably concluded that Norma's conduct constituted cruel treatment such that the marriage was made insupportable. *See Merrell Dow,* 953 S.W.2d at 711. The evidence is, therefore, legally sufficient to support the finding, and we will not disturb the trial court's conclusion.

## B. Factual Sufficiency

We now examine the evidence for factual sufficiency, weighing all of the evidence in the record and overturning the finding only if it is so against the great weight and

preponderance of the evidence as to be clearly wrong and unjust. *See Ortiz*, 917 S.W.2d at 772. Norma disagreed that all of the separations were at her insistence. She testified that during one separation, Ian told her that he did not love her. She maintained that there was a communication problem in the marriage and that the fact that they both worked long and irregular hours made working through problems difficult. She stated that they attended marriage counseling in Canada at her request before they moved to Texas. She further testified that she never threatened legal action against Ian, as he contended, and that he had been saying that they should just agree on the divorce and not take it to court up to the time that he filed the lawsuit. She said that he moved some of his belongings out of the property before having her served and that he moved into the apartment next door to continue to exert control over the family. She stated that she did not seduce him during the pendency of the divorce. She tried to use a credit card during this period but found that Ian had cancelled it. She insisted that she did not intend to leave the bookcase in danger of being damaged, it just happened to fall over.

▮ The vast majority of the evidence regarding cruel treatment in this case comes from the testimony of Ian and Norma. There were no other witnesses called at trial except for the trial attorneys, who principally testified regarding legal fees. The weight to be given the respective testimony of Ian and Norma, therefore, is largely a matter of judging the credibility and demeanor of the witnesses. This court is not permitted to interfere with the fact finder's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *Sprick v. Sprick*, 25 S.W.3d 7, 13 (Tex.App.—El Paso 1999, pet. denied). It was within the trial court's discretion to believe Ian's testimony to the extent it conflicted with Norma's. With this in mind, the court's determination of cruel treatment was not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Ortiz*, 917 S.W.2d at 772. Accordingly, we overrule this point of error.

### III. Property Division[1]

▮ A trial court's division of property is not to be disturbed absent a clear abuse of discretion. *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex.1974). Even then, we should reverse only if the error materially affects the court's just and right division of the property. *Jacobs v. Jacobs*, 687 S.W.2d 731, 732–33 (Tex.1985). The test for abuse of discretion is whether the court acted without reference to any guiding rules or principles, i.e. whether the act was arbitrary or unreasonable. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). Under an abuse of discretion standard, legal and factual insufficiency are not independent reversible grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991).

Three bank accounts were at issue before the court: (1) Ian's Locked-in Registered Retirement Savings Plan (L–RRSP); (2) Ian's Registered Retirement Savings Plan (RRSP); and (3) the "spousal ac-

1. The funds subject to characterization and division were in Canadian dollars in Canadian accounts. Several of the reimbursement claims, along with the award of costs and attorney's fees, were in U.S. dollars. For clarity, sums in this opinion will be calculated in Canadian dollars (unless otherwise indicated), using the same exchange rate determined and utilized by the trial court.

count," which was in Norma's name. The trial court found that these three accounts were all established from Ian's retirement funds. The court also specifically found that the spousal account was not intended as a gift to Norma but was put in her name solely for tax purposes.

The court calculated that the three accounts were worth a total of $101,678.68 (Can.) as of April 21, 1998. This total included certain reimbursements, discussed below, for funds that the court determined to have been advanced to Norma on the eventual distribution of the community assets. The trial court then utilized the *Berry* formula and divided the months that Ian worked for Nova during the marriage (61.2) by the total number of months Ian worked for Nova (171.21). *See Berry v. Berry,* 647 S.W.2d 945, 946 (Tex.1983). This formula produced a ratio that awarded .6426 of the funds in the retirement accounts to Ian as his separate property ($65,338.72) and established .3574 of the funds as community property ($36,339.96) to be divided among the parties ($18,169.98 each).

### A. The Commuted Retirement

When Ian left Nova, he received the commuted value of his pension plan, $27,397.44 (Can.). He rolled these funds into the L–RRSP, where they stayed until the divorce. The trial court properly applied the *Berry* formula to these funds. Norma, in fact, applied the same formula to the funds in her distribution proposal to the trial court. These funds are, therefore, not at issue in this appeal.

### B. The Severance Package

■ A "Discretionary Severance" package, amounting to $63,699.09 (Can.), was made available to Ian in 1995, when Nova was "downsizing" its workforce. Ian accepted the package and left the company. Upon receipt, a portion of the funds

were deposited in his RRSP account and the spousal account, and a portion was received in cash. The deposited funds remained in the same accounts until the divorce. The trial court determined that all the funds in the accounts were from Ian's retirement benefits and applied the *Berry* formula to the total amounts.

Ian testified that the amount of the severance package was based on his years of service to the company, his position, and his performance. The documents submitted from Nova demonstrate that the severance package was an inducement for Ian, and everyone else offered such a package, to leave the company voluntarily. The documents specifically refer to the package as a "payment of 11 months salary" that included compensation for "wages, income, severance pay, termination pay, pay in lieu of notice, expenses, damages and employment benefits." Ian was required to sign a release of all claims against Nova in order to receive the package.

In *Whorrall v. Whorrall,* 691 S.W.2d 32 (Tex.App.—Austin 1985, writ dism'd), the court stated:

> To qualify as a "retirement benefit" capable of being apportioned between his separate and the community estate [sic], the payment must be an "earned property right which accrued by reason of years of service," *Busby v. Busby,* 457 S.W.2d 551 (Tex.1970); or must be a "form of deferred compensation which is earned during each month of service," *Cearley v. Cearley,* 544 S.W.2d 661, 665 (Tex.1976).

*Whorrall,* 691 S.W.2d at 37. *See also In re Reinauer,* 946 S.W.2d 853, 857 (Tex. App.—Amarillo 1997, writ denied)(following *Whorrall* ). In *Whorrall,* the husband asserted that what was essentially a severance package was a "supplementary retirement benefit" and thus subject to division between his separate estate and the com-

munity estate. The court of appeals disagreed, holding that the property right in the funds only accrued when the husband agreed to retire early because had he refused to retire early he would not have received the payment and the payment was purely discretionary with the company. *Id.* at 38. Although there was some evidence that the payment was for past service, the court found much more evidence weighing in the opposite direction. *Id.*

In the present case, it is clear from the Nova documents that Ian's severance package was purely discretionary with the company and was given only to induce his voluntarily leaving his employment and release any related claims he may have had against Nova. Ian's property right in these funds accrued only once he signed the release of claims. The evidence is legally insufficient to support the trial court's finding that the severance package was in the nature of a retirement benefit. The application of the *Berry* ratio to the RRSP and spousal accounts funded from the severance package was without proper legal or evidentiary foundation and was, therefore, an abuse of discretion. *See Worford,* 801 S.W.2d at 109.

#### C. The Previous Balance

 When the funds from the severance package were deposited into the RRSP account, the account already had a balance of $10,399.54 (Can.). Ian testified that the existing funds came from his 1994

salary, placed there in order to receive a tax benefit. He also later testified that perhaps up to $1,000 came from Norma's income from her part-time job. These funds were, therefore, clearly community property. *See* TEX. FAM.CODE ANN. § 3.002 (Vernon 1998); *Uranga v. Uranga,* 527 S.W.2d 761, 764 (Tex.Civ.App.—San Antonio 1975, writ dism'd)(salary earned during marriage is community property). The trial court further abused its discretion in applying the *Berry* formula to this prior balance.

#### IV. Reimbursement Issues[2]

 Norma next contends that the trial court erred in granting several of Ian's reimbursement claims. The law presumes that property possessed by either spouse at the dissolution of the marriage is community property. TEX. FAM.CODE ANN. § 3.003(a) (Vernon 1998). The presumption may be rebutted and the property shown to be separate property only on clear and convincing evidence. *Id.* at 3.003(b). Reimbursement is an equitable right and its application lies within the broad discretion of the trial court. *Jones v. Jones,* 890 S.W.2d 471, 476 (Tex.App.—Corpus Christi 1994, writ denied). Permissible reimbursement may run from community estate to separate estate, from separate estate to community estate, and from separate estate to separate estate. *See Dakan v. Dakan,* 125 Tex. 305, 83 S.W.2d 620, 627 (1935).

#### A. Norma's Student Loan

**2.** It is interesting to note that although the settlement agreement purported to settle, waive, and release all claims between the parties except in regard to distribution of the retirement accounts and the vehicles, the parties went on to litigate several claims for reimbursement that involved funds that had never been in the retirement accounts. The trial court then ruled on these reimbursement claims despite having approved the settlement agreement. Several of these claims were de- cided in Ian's favor and several in Norma's. Neither party objected to the consideration of these issues in the trial court and neither party raises the subject on appeal; it will, therefore, have no impact on our consideration of the reimbursement issues. Additionally, since Ian does not complain on appeal of any of the issues on which he lost in the trial court, we will only consider the issues on which Ian won.

It is undisputed that Norma entered the marriage with a student loan debt of $8,558 (Can.). Ian testified that he withdrew $4,800 (Can.) from his RRSP, which he had prior to the marriage, for partial payment of the student loan. He also testified that money to pay the loan may have come from Norma's part-time job. Norma admitted during her testimony that the debt was paid during the marriage, but she did not address the question of where the money came from to pay the debt.

■■■ The trial court awarded Ian reimbursement for the full amount of the student loan, $8,558 (Can.). The evidence, however, supports, at most, a reimbursement from Norma's separate property to Ian's separate property of $4,800 (Can.), the amount Ian testified that he spent of his separate funds. *See Pearce v. Pearce,* 824 S.W.2d 195, 201 (Tex.App.—El Paso 1991, writ denied)(reimbursement must be within the limits of the evidence). The evidence also supports a reimbursement from Norma's separate property to the community estate of $3,758 (Can.), the balance of the loan being paid during the marriage, presumably with community funds. *See Horlock v. Horlock,* 533 S.W.2d 52, 60 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ dism'd)(party seeking reimbursement to community is aided by presumption that expended funds came from community estate). *But see Price v. McAnelly,* 287 S.W. 77, 79 (Tex.Civ.App.-San Antonio 1926, writ dism'd)(burden on party claiming reimbursement to community). These community funds should then be considered by the trial court in making a just and right division of the property on remand.

## B. $1,500 Withdrawal

It is also undisputed that Norma withdrew $1,500 (U.S.) from a community savings account. The trial court ordered reimbursement from Norma's separate estate to the community estate for the full amount, with Ian then receiving half, or $750.

■■■ Norma testified that she spent the money for the welfare of the children. Generally, there is no right to reimbursement for costs of living. *See Norris v. Vaughan,* 152 Tex. 491, 260 S.W.2d 676, 683 (1953). Ian suggests that the money was used to pay for Norma's attorney because it was withdrawn in close proximity to when she said she had taken legal action against him. A court may consider prior payments to attorneys from the community estate in making a just and right division of the marital estate. *Eikenhorst v. Eikenhorst,* 746 S.W.2d 882, 890 (Tex. App.—Houston [1st Dist.] 1988, no writ). Ian, however, did not directly testify that the money was spent on legal fees, nor did he offer any other testimony or documentary evidence to support this claim. The evidence is, therefore, insufficient to support the trial court's award of an offset for these funds.

Furthermore, it is undisputed that the withdrawal occurred on April 8, 1997, and that it was from a joint account. The temporary restraining order in this case was not signed until April 16, 1997. There is no evidence that Norma was under any prohibition against withdrawing funds from a joint account at the time of the withdrawal.[3] *See generally Davis v. Davis,*

---

3. In his brief, Ian erroneously maintains that the temporary orders were in place at the time of this withdrawal. The temporary orders were signed on May 7, 1997, but the withdrawal occurred, according to both sides' briefs and Ian's own testimony, on April 8, 1997. Furthermore, both the temporary orders and the initial temporary restraining order (signed April 16) contained provisions allowing the parties to make expenditures for reasonable attorney's fees and reasonable living expenses.

186 S.W. 775, 777 (Tex.App—Texarkana 1916, writ dism'd)("[a] married woman has as much interest in the community property as her husband, and has an equal right to its beneficial use."). Nor is there any allegation that she squandered the funds or committed a fraud against the marital estate. *See Andrews v. Andrews,* 677 S.W.2d 171, 175 (Tex.App.—Austin 1984, no writ). Ian's contention that she spent the money on an attorney is based on the barest of circumstantial inferences. Such evidence is not sufficient to support the trial court's granting of the offset.

### C. Closeout of Cash Account

 It is undisputed that Ian wrote a check to Norma for $5,080 (U.S.) in April 1997. The check was written after Ian closed the "cash account" that was in his name. Ian testified that when he closed the cash account, he gave half of the proceeds to Norma and kept half for himself. He also stated that the funds in the cash account came from the reimbursement of his purchase of a vehicle that was part of an "entrepreneurial package" that he was eligible for upon his leaving the employ of Nova. The trial court found that these funds were in the form of an advance on the retirement accounts. The trial court then awarded an offset for the full amount of this transaction, or $7,125.78 (Can.).

The entrepreneurial package was a program under which employees of Nova could obtain funds in order to start their own independent contracting businesses. According to Ian, in order to be eligible for the package, he had to: (1) have three years employment with the company, and (2) complete a detailed business plan for the consulting business. It also appears that the entrepreneurial package only made one eligible for reimbursement of expenses already made in setting up the company.

 In order to be considered a retirement benefit, this entrepreneurial package must have been an earned property right, which accrued by reason of years of service, or must be a form of deferred compensation, which was earned during each month of service. *See Whorrall,* 691 S.W.2d at 37; *Reinauer,* 946 S.W.2d at 857. The entrepreneurial package was clearly not deferred compensation that was earned monthly, but the question of whether it accrued by length of service is more difficult.

In *In re Joiner,* 755 S.W.2d 496 (Tex. App.—Amarillo 1988), *motion for rehearing overruled,* 766 S.W.2d 263 (no writ), the court addressed a similar issue in which the husband became eligible to participate in the company's profit sharing plan only after five years of employment. The husband argued that his separate interest in the funds should be figured so as to include the five years because the period created an expectancy to participate in deferred compensation by continued employment. The court of appeals, however, rejected that contention, reasoning that no actual benefits were earned during the years required for eligibility; instead, the employee acquired a mere expectancy which did not fix any benefit in any sums at any future date and to which the laws of property could not apply. *Id.,* 755 S.W.2d at 498.

In the present case, the entrepreneurial package was even further removed from any accrued right in benefits, because, after becoming eligible for the opportunity, Ian still had to complete and have approved a detailed business plan, and he had to make and prove expenditures that were only then reimbursed by Nova. Ian's rights in the funds of the entrepreneurial package did not accrue until he completed the plan, had it approved, and submitted legitimate invoices. He did each of these

during the marriage. The money from the entrepreneurial fund was not a retirement benefit. *See id.* at 498. It was community property. *See* Tex. Fam.Code Ann. § 3.003(a)(Vernon 1998); *Uranga,* 527 S.W.2d at 764. *See also Bantuelle v. Bantuelle,* 195 S.W.2d 686, 689 (Tex.Civ. App.—Texarkana 1946, no writ)("all the rents, profits, earnings and other revenues received from all realty and business enterprises during the marriage [are] community property").

Ian testified that when he cashed in the account, he kept half of the money and gave the other half to Norma. Norma testified that she used the funds for living expenses for herself and the children. *See generally Norris,* 260 S.W.2d at 683 (no reimbursement for community living expenses). Ian offered no contradictory evidence on how the money was spent. The trial court's stated reason for ordering an offset to the community estate, i.e. that the funds were from a retirement account, is not supported by the evidence.

### D. "Separation Related Loan"

■ It is likewise undisputed that Ian wrote a check to Norma on April 15, 1997, for $1,000 (U.S.). In its conclusions of law, the trial court called this transfer of funds "an advance ... on division of community property." The court then granted an "offset" of this amount to Ian.

In the "memo" blank of the check is a handwritten notation by Ian: "Separation related loan." Ian also testified that these funds were an "advance," and his proposed division of property called them an "advance" as well. In her testimony, Norma admitted receiving the check in question and did not refute that the funds were an advance or a "separation loan" from Ian to her.

Although the evidence regarding the nature of this transaction is far from over-

whelming, it is sufficient to support the trial court's use of its discretion in finding it was an advance on the community estate.

## V. Attorney's Fees

Norma next contends that the trial court abused its discretion in assessing Ian's attorney's fees of $18,350 against her. She specifically argues that: (1) the award could not have been made pursuant to the statutory authority for such awards in suits affecting the parent-child relationship because all issues regarding the children in this case were settled in mediation; (2) the award of fees cannot be construed as a just and right division of the community estate; and (3) there was no evidence that Ian had any obligation to his attorney to pay the fees.

■ A trial court may award attorney's fees in a suit affecting the parent-child relationship. Tex. Fam.Code Ann. § 106.002 (Vernon Supp.2000). A court may also apportion attorney's fees in a divorce action as part of a just and right division of property. *Capellen v. Capellen,* 888 S.W.2d 539, 544–45 (Tex.App.—El Paso 1994, writ denied). The award of attorney's fees in a divorce action not involving the parent-child relationship cannot exceed the value of the community property at issue before the court. *Chiles v. Chiles,* 779 S.W.2d 127, 129 (Tex.App.— Houston [14th Dist.] 1989, writ denied), *overruled on other grounds by Twyman v. Twyman,* 855 S.W.2d 619, 624 (Tex.1993). This is true even when the court finds fault. *See Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 139 (Tex.1977).

In the present case, the trial court's judgment states that Ian's attorney's fees were "necessary as support for [Ian] and the children." Although the use of the term "support" in this context is confusing, it appears that the court may have award-

ed fees under both sources of authority, as part of the division of property and in relation to the suit affecting the parent-child relationship. The court did not segregate which fees were awarded under each grant of authority.[4]

■ Norma contends that the award was not a just and right division of the property. She also contends that the fact that the parties settled all issues relating to the children precluded the court from making an award of attorney's fees on a suit affecting the parent-child relationship. Although these are interesting issues, they were never raised in the trial court. In order to preserve certain complaints regarding an award of attorney's fees, a party must make a timely and sufficiently specific objection to such an award in the trial court. See Tex.R.App. P. 33.1; *Massey v. Massey*, 807 S.W.2d 391, 403 (Tex. App.—Houston [1st Dist.] 1991, writ denied)(issue regarding attorney's fees could not be raised for first time on appeal); *Villasenor v. Villasenor*, 911 S.W.2d 411, 420 (Tex.App.—San Antonio 1995, no writ)(party failed to object to award of fees in open court or in motion for new trial). Appellant fails to cite to any such objection in the record, and a careful review reveals that no objection was made.[5] Appellant has, therefore, waived these arguments.

■ Norma additionally contends that there was no evidence establishing that Ian was obligated to pay the fees. The record, however, contains the testimony of Ian's trial counsel, Douglas Foster, who stated that Norma's conduct put Ian in the position of having to incur attorney's fees in the amount requested. He further testified regarding the reasonableness of the fees, the hours worked, the rate charged, and the services provided. Ian testified that he had expended $18,350 in attorney's fees up to a certain point in the trial and that he still owed a great deal of the fees. This is sufficient evidence on which the court could have determined that Ian was obligated to pay the fees. See *Parker v. Parker*, 897 S.W.2d 918, 935–36 (Tex. App.—Fort Worth 1995, no writ), *overruled on other grounds by Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

■ Accordingly, the trial court's award of attorney's fees is affirmed to the extent it is based on the suit affecting the parent-child relationship. However, to the extent the fees were awarded as part of the division of the property, the trial court should reexamine the award on remand as a part of making a just and right division of the property. See *In re Joiner*, 755 S.W.2d at 498.

## VI. Conclusion

■ As detailed above, we affirm the portions of the judgment wherein the trial court granted divorce on the ground of cruel treatment and awarded attorney's fees (to the extent that they were based on the suit affecting the parent-child relation-

---

4. Although there was some evidence linking the expenditure of attorney's fees with the issues relating to the children, there was more substantial evidence suggesting that most of the fees were incurred as a result of disagreements over property. Ian's counsel testified that Norma's monetary demands escalated the fees, and, it should be noted, all issues concerning the children were settled well before trial.

5. Appellant did not make these arguments in a motion for new trial or a motion to modify the judgment. Nor did she object when the Appellee put on his evidence regarding the amount of attorney's fees or when he presented evidence connecting some of the fees to issues involving the children.

ship). We further find that the trial court abused its discretion in the characterization and division of the marital estate. When reversible error is committed that materially affects the trial court's just and right division of property, a court of appeals is not permitted to either render a different division or to remand only certain portions of the marital property for a new division; rather, it must remand the entire community estate for a new division. *Jacobs*, 687 S.W.2d at 732–33. Accordingly, we remand in order for the trial court to exercise its discretion in determining a new division of the property in keeping with the limits of the evidence and the dictates of this opinion.