**Affirmed and Memorandum Opinion filed December 27, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00049-CV

## CARLTON DEVON SYKES, Appellant

## V.

## KISHON KIM SYKES, Appellee

**On Appeal from the 246th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-68288**

## M E M O R A N D U M    O P I N I O N

In this appeal following dissolution of the parties' marriage, appellant Carlton Devon Sykes asserts that the trial court mischaracterized his separate property as community property, which he claims resulted in a division of the community property that is manifestly unjust and unfair in favor of appellee Kishon Kim Sykes. We affirm.

# I. BACKGROUND

Kishon and Carlton were married in 2008. They have one child together. During their marriage, in May 2011, Carlton settled a discrimination suit against his employer, FMC Technologies, Inc. for $778,571.43 for "mental anguish, pain and suffering, emotional distress, loss of enjoyment of life, [and] physical injuries." The settlement did not include "payment for back pay, front pay, or lost benefits." As part of the agreement, Carlton agreed to resign from his job at FMC. Funds from the FMC settlement in the amount of $447,640.32, after attorney's fees were paid, were placed in a savings account at USAA. No sums were withheld for taxes.

Kishon and Carlton purchased a house later that year for $286,196. The loan for the house was in Kishon's name and both parties' names were on the deed. Funds from the USAA savings account were used to make a down payment of $131,136.98 as well as monthly mortgage payments and the final pay-off, in January 2013, in the amount of 131,610.89.

Kishon filed for divorce in November 2015, asserting as grounds insupportability, cruelty, and adultery. Carlton filed a counterpetition for divorce, also on the grounds of insupportability, cruelty, and adultery. The parties entered into a mediated settlement agreement as to issues concerning their child.

Kishon filed a first amended petition. Initially, the electronic filing was rejected. It was successfully filed shortly thereafter but less than seven days before trial. Carlton objected to and moved to strike the amended petition because Kishon (1) raised new claims for fraud and wasting community assets; and (2) asked the trial court to reconstitute the estate less than seven days before trial. Carlton argued that Kishon's new claims could impact the division of the community estate and were based on documents provided in March 2016. The trial court heard and denied Carlton's motion to strike before the start of trial.

The trial court signed the final decree of divorce, incorporating the mediated settlement agreement as to issues concerning the child. The trial court granted Kishon a divorce from Carlton on the grounds of insupportability and cruelty. The trial court awarded Carlton, among other things, the house and all the household furnishings. Although Carlton sought reimbursement for the entire purchase price of the house because the funds used to buy the house were purportedly his separate property, the trial court denied Carlton's request for reimbursement. Instead, the trial court awarded Kishon $160,000 payable by Carlton and imposed an owelty lien on the entire homestead to secure the $160,000 debt to Kishon. The trial court awarded Kishon a disproportionate share of the community estate. The parties did not request and the trial court did not make findings of fact and conclusions of law.

## II. ISSUES

Carlton brings the following issues in this appeal: (1) the trial court committed reversible error by denying his claim for reimbursement; (2) the trial court abused its discretion in characterizing and dividing the marital property; (3) the evidence is legally and factually insufficient to support the trial court's finding that Carlton is guilty of cruel treatment; and (4) the trial court committed reversible error by overruling and denying Carlton's objection to, and motion to strike, Kishon's first amended petition for divorce.

## III. ANALYSIS

### A. Whether Carlton is Entitled to Reimbursement

In his first issue, Carlton contends that the trial court erred by denying his claim for reimbursement for the down payment, monthly mortgage payments, and final pay-off amount on the house from the funds in his USAA savings account. *See In re Marriage of O'Brien*, 436 S.W.3d 78, 82 (Tex. App.—Houston [14th Dist.]

2014, no pet.) (stating that "[r]eimbursement is an equitable right that arises when the funds or assets of one estate are used to benefit and enhance another estate without the first estate receiving some benefit."). Carlton asserts that the settlement funds were his separate property and those funds were used to pay for the house. To decide the issue, we first must determine the nature of the settlement funds.

Under both the Texas Constitution and the Texas Family Code, a spouse's separate property consists of (1) the property the spouse owned or claimed before marriage, and (2) the property the spouse acquired during marriage by gift, devise, or descent. Tex. Const. art. XVI, § 15; Tex. Fam. Code Ann. § 3.001; *Villalpando v. Villalpando*, 480 S.W.3d 801, 806 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Community property, by contrast, consists of all property, other than separate property, acquired by either spouse during the marriage. Tex. Fam. Code Ann. § 3.002; *Villalpando*, 480 S.W.3d at 806. The law presumes all property possessed by either spouse during or on dissolution of marriage to be community property. Tex. Fam. Code Ann. § 3.003; *Villalpando*, 480 S.W.3d at 806.

The burden of overcoming this presumption rests on the party asserting otherwise, and that party must make the showing by clear and convincing evidence. *Barras v. Barras*, 396 S.W.3d 154, 163 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). "Clear and convincing" evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Villalpando*, 480 S.W.3d at 806. This evidence generally must trace and clearly identify the property as separate. *Zamarripa v. Zamarripa*, No. 14-08-00083-CV, 2009 WL 1875580, at *3 (Tex. App.—Houston [14th Dist.] June 30, 2009, pet. denied) (mem. op.). "Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the

4

property." *Graves v. Tomlinson*, 329 S.W.3d 128, 139 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). The clear-and-convincing standard is not satisfied by testimony that the property possessed at the time the marriage is dissolved is separate property when the testimony is contradicted or supported by documentary evidence tracing the asserted separate nature of the property. *Barras*, 396 S.W.3d at 163.

Carlton asserts funds recovered for mental pain and anguish are his separate property. *See Licata v. Licata*, 11 S.W.3d 269 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Recovery for personal injuries, including mental pain and anguish, to a spouse is the separate property of that spouse. *Id.* at 273. The community estate is entitled to recovery for loss of earning capacity during the marriage, for medical expenses incurred during the marriage, and for other expenses associated with injury to the community estate. *Id.*

The settlement agreement between Carlton and FMC stated that the settlement payment did "not include payment for back pay, front pay or lost benefits" but only for claims of "mental anguish, pain and suffering, emotional distress, loss of enjoyment of life, [and] physical injuries." Carlton argues this language "displaced the presumption of community property and created a presumption that the settlement proceeds are [his] separate property." *Id.* at 274. According to Carlton, these recitals "become prima facie evidence the recovery is separate property." *Id.* The spouse claiming that the recovery is community property then must present evidence to rebut this separate-property presumption, and the failure to do so conclusively establishes that the recovery is separate property. *Id.*

Under *Licata*, it would appear that the settlement funds are Carlton's separate property. Yet, the settlement agreement also contained a confidentiality provision, which prohibited disclosing the terms of the agreement. In the settlement agreement, Carlton agreed that:

5

"[H]e will maintain the confidentiality of this Agreement and will not disclose in any fashion or publish on any website this Agreement, the amount of this settlement, and/or the substance or content of the settlement discussions involved in reaching this Agreement to any person other than his attorneys, accountants, and tax advisors as required by appropriate taxing authorities or as required by law. If inquiries are made of EMPLOYEE regarding said case, EMPLOYEE will state that the case is resolved and shall not further characterize this settlement.

In its oral rendition, the trial court relied, in part, on the confidentiality provision in finding that the settlement funds were not separate property:

I also find that the settlement was not made with both parties; therefore, the settlement agreement is completely one-sided. And there's no way to determine whether it is a community settlement, a separate property settlement, or what it is. Since it's not clear, I have to find that it's community property. . . . And . . . it says that this document is not to be used as evidence in any proceeding other than between the two parties to this agreement. Therefore, whatever it says in here, the petitioner states in this that that's no evidence at all.

The trial court concluded that the settlement agreement was no evidence at all because the agreement stated that it could not be used as evidence in any other proceeding other than one between the parties to the agreement. The interpretation of an unambiguous contract is a question of law for the court. *In re Marriage of I.C. & Q.C.*, 551 S.W.3d 119, 122 (Tex. 2018). Carlton does not challenge the trial court's finding that the settlement agreement is no evidence of the separate-property nature of the settlement funds. There is no ambiguity in the settlement agreement regarding the confidentiality of the terms of the agreement, and we agree that it is not evidence that the settlement funds are Carlton's separate property. Therefore, Carlton is not entitled to a presumption that the settlement funds are his separate property. *Cf. Licata*, 11 S.W.3d at 274 (holding that recitals in settlement agreement that the payment was for physical pain, mental anguish, physical disfigurement, and other intangible damages created a rebuttable presumption that the settlement

6

proceeds were the wife's separate property).

Because there is no evidence that the funds deposited into the USAA savings account in May 2011 were Carlton's separate funds, they are presumed to be community property. To prevail, Carlton had to overcome the community-property presumption by clear and convincing evidence. *See Barras*, 396 S.W.3d at 163.

The trial court admitted into evidence a May 31, 2017 statement for the USAA savings account showing that $447,665.32 was deposited on May 17, 2017. However, Carlton did not testify or present documentary evidence showing the date the USAA savings account was opened, the amount of funds in the account as of the date of marriage, or all deposits and withdrawals from the date the account was opened, particularly after the marriage. In the absence of tracing of the funds used to make the down payment, monthly mortgage payments, and final pay-off amount, Carlton has failed to show by clear and convincing evidence that the funds he used to pay for the house were his separate property. *See Smith v. Smith*, 22 S.W.3d 140, 146 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("Generally, when separate property and community property are commingled in a single bank account, we presume that the community funds are drawn out first, before separate funds are withdrawn, and where there are sufficient funds at all times to cover the separate property balance in the account at the time of divorce, we presume that the balance remains separate.").

Carlton further asserts that Kishon judicially admitted that he used separate-property funds on the house. Kishon stated twice in her proposed inventory and property division, admitted into evidence, that Carlton's separate estate was entitled to reimbursement from the community of $133,136.98. Carlton asserts these statements in Kishon's proposed inventory and property division constitute a judicial admission that the settlement funds were his separate property. Kishon's statements,

7

however, do not qualify as judicial admissions that Carlton's settlement recovery is his separate property because judicial admissions involve statements of fact, not conclusions of law. *See Rolls v. Rolls*, No. 03-24-00453-CV, 2016 WL 284373, at *2 (Tex. App.—Austin Jan. 14, 2016, no pet.) (holding that husband's inventory reflecting a mistaken legal conclusion that a portion of a policy was community property could not be considered a judicial admission).

The trial evidence supports an implied finding by the trial court that Carlton failed to prove by clear and convincing evidence that Carlton used separate funds to pay for the house. *See Hinton v. Burns*, 433 S.W.3d 189, 196 (Tex. App.—Dallas 2014, no pet.) (stating that "a spouse making a claim for reimbursement on behalf of a separate estate must prove by clear and convincing evidence that the funds expended on behalf of the community estate were separate funds"). The trial court did not abuse its discretion by denying Carlton's claim for reimbursement. *See id*. We overrule Carlton's first issue.

**B.     Whether the Trial Court Abused its Discretion in Dividing the Community Estate**

In his second issue, Carlton claims that the trial court abused its discretion in dividing the community estate.

In cases such as this, in which no findings of fact or conclusions of law were filed, we imply all findings of fact necessary to support the trial court's judgment. *In re Marriage of Russell*, 556 S.W.3d 451, 457 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Where a reporter's record is brought forward on appeal, the appellant may challenge these implied findings by challenging the legal and factual sufficiency of the evidence. *Licata*, 11 S.W.3d at 272.

In a divorce decree, the trial court must order a division of the estate of the parties in a manner that the court deems just and right. *Stavinoha v. Stavinoha*, 126

S.W.3d 604, 607 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The trial court possesses wide discretion in ordering a property division. *Barras*, 396 S.W.3d at 163. To convince this court to disturb the trial court's division of property, Carlton must show the trial court clearly abused its discretion by a division that is manifestly unjust and unfair. *See Villalpando*, 480 S.W.3d at 805. Under the abuse-of-discretion standard, legal and factual sufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Willis v. Willis*, 533 S.W.3d 547, 551 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A trial court does not abuse its discretion if the record contains some evidence of a substantive and probative nature to support the decision. *Knight v. Knight*, 301 S.W.3d 723, 728 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

In reviewing the trial court's property division, we must consider (1) whether the trial court had sufficient information upon which to exercise its discretion and (2) whether the trial court abused its discretion by dividing the property in a manner that is manifestly unjust and unfair. *Evans v. Evans*, 14 S.W.3d 343, 346 (Tex. App.—Houston [14th Dist.] 2000, no pet.). We are to resolve every reasonable presumption in favor of a proper exercise of discretion of the trial court in dividing the property of the parties. *Chavez v. Chavez*, No. 14-14-00481-CV, 2016 WL 1613240, at *5 (Tex. App.—Houston [14th Dist.] April 21, 2016, no pet.).

Carlton asserts that the trial court mischaracterized the settlement funds as community property rather than his separate property, which resulted in the denial of his claim for reimbursement and a manifestly unjust and unfair property division. As discussed above, the trial court did not abuse its discretion by finding that the settlement funds were community property and, in turn, denying Carlton's claim for reimbursement regarding the purchase of the house.

Carlton also asserts that the trial court abused its discretion by denying his

request for reimbursement of the purchase of home furnishings in the amount of $17,401.49 because they were bought with the settlement funds. But, as already discussed, Carlton failed to overcome the community-property presumption, and the trial court did not abuse its discretion by denying Carlton reimbursement for the purchase of the furniture.

Carlton also maintains that the trial court abused its discretion by denying his claim for reimbursement with respect to a BMW car. Under the trial court's temporary orders, Kishon had exclusive possession and use of the car and she was ordered to make the payments on the car and pay the insurance on the car. Kishon testified, however, that Carlton verbally agreed to continue to pay the insurance on the car.

Kishon was involved in accident in the BMW. When she called to make a claim, she learned that the insurance would not cover the costs of the repairs. Kishon approved $9,000 in repairs on the car but did not pay the mechanic. Kishon also testified that she stopped making payments on the car after the accident. USAA took $3,172 out of Carlton's account (to apply to the indebtedness) after Kishon stopped making payments. USAA paid the mechanic and sold the car. The remaining debt on the BMW is $15,247.46. Carlton asked that Kishon reimburse him the $3,179.11 that was taken from his USAA savings account for the car payments Kishon failed to make. The trial court awarded Carlton and Kishon each 50% of the BMW debt. The trial court did not award Carlton reimbursement for the $3,179.11 USAA took out of the checking account.

Carlton claims that he should have been reimbursed for the BMW payments. According to Carlton, the funds taken out of his USAA savings account were his separate property because Kishon had exclusive use and possession of the BMW and she was ordered to make the monthly payments and insurance. But, because Carlton

10

failed to overcome the presumption by clear and convincing evidence that the settlement funds deposited into the USAA savings account were community property, the trial court did not abuse its discretion by not ordering Carlton reimbursed for the BMW payments.

Carlton further complains that the trial court should not have awarded him half of the BMW debt. Carlton, however, admitted that the BMW was community property and the loan was community debt. Thus, there was no abuse of discretion by the trial court in awarding Carlton half of the BMW debt.

Finally, Carlton complains about the trial court's finding of fraud as to his cashing out a 401(k) account at FMC. When the trial court makes a finding of fraud, it must perform two calculations: the first is the "value by which the community estate was depleted as a result of the fraud on the community," and the second is "the amount of the reconstituted estate." *Cantu v. Cantu*, 556 S.W.3d 420, 427 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (quoting Tex. Fam. Code Ann. § 7.009(b)(1)). The reconstituted estate is defined as the total value of the community estate that would have existed had a fraud on the community not occurred. *Id.* (citing Tex. Fam. Code Ann. § 7.009(a)). After making these calculations, the trial court must "divide the value of the reconstituted estate between the parties in a manner the court deems just and right." *Id.* (quoting Tex. Fam. Code Ann. § 7.009(c)).

Fraud is presumed when one spouse disposes of the other spouse's one-half interest in community property without the other spouse's knowledge or consent. *Id.* This presumption arises not only by evidence of specific transfers or gifts of community assets outside of the community, but also by evidence that community funds are unaccounted for by the spouse in control of those funds. *Id.* Once the presumption of fraud arises, the burden shifts to the disposing spouse to prove the

11

fairness of the disposition. *Id.*

Kishon alleged that Carlton fraudulently cashed out his FMC 401(k) account without her knowledge. Kishon testified that she first learned during the July 29, 2016 mediation that Carlton had cashed out the 401(k), which, in April 2015, was worth $43,000. Carlton does not remember being asked whether he was married when he cashed out the 401(k) account. Carlton was able to cash out the 401(k) account without Kishon signing anything, and Kishon confirmed that she did not sign any documents regarding the withdrawal of the funds from the 401(k) account. Carlton testified that he deposited the money from the 401(k) account into his checking account at USAA, which was in his name only. He then transferred $25,000 from the checking account to the USAA savings account.

Kishon stated that, in August 2015, Carlton mentioned to her that he had taken some money out of the 401(k) account, but he did not tell her that he had taken out all the money. Kishon testified that Carlton told her that he had used it for their vacation in Virginia in August 2015. The trip was planned around the same time that Carlton cashed out the 401(k) account in April 2015, but Kishon did not know if he took the money out before or after the trip was planned. Kishon stated that she did not know what Carlton had done with the money after he put it into the USAA savings account.

Carlton testified that he and Kishon first started discussing cashing out the 401(k) account after they had spent $15,000 on a trip to Disney World, where Kishon's daughter had participated in a track meet, and $7,500 on a birthday party for Kishon. Also, according to Carlton, he had set aside money to pay taxes, but that money was spent on Kishon's birthday party. Carlton explained that "I knew we were going to have to struggle the next year to pay for the taxes."

Kishon testified that when confronted, Carlton confirmed that he gave some

12

money to a female, Joycelin Phelps, who was not a relative. Carlton did not tell Kishon that Phelps was a party planner, or that he had given Phelps money to plan a birthday party for Carlton's other daughter in 2015. According to Kishon, Carlton told her that Phelps was a close friend and he gave money to Phelps because she "had gotten put out of her house."

These facts support a presumption of fraud on the community estate. *See id.* The checking and savings accounts at USAA were in Carlton's name and under his control, and he could not account for where all of the $43,000 from the 401(k) account had been spent. Kishon testified that Carlton gave money to his close female friend. Carlton has not established the fairness of the disposition. *See id.*

Moreover, Carlton has not overcome the community-property presumption. Not all the funds in the 401(k) account were acquired during marriage. Carlton worked at FMC for about two years before and he and Kishon were married. Carlton did not provide any statements showing what portion of the 401(k) account was his separate property and what portion belonged to the community. Because Carlton did not overcome the community-property presumption, the trial court did not mischaracterize the money from the 401(k) account as community property.

Carlton has not shown that the trial court abused its discretion by dividing the estate of the parties in a manner that is manifestly unjust and unfair. We overrule Carlton's second issue.

## C. Whether the Evidence is Sufficient to Support the Trial Court's Finding of Cruel Treatment

In his third issue, Carlton contends that the evidence is legally and factually insufficient to support the trial court's finding of cruel treatment. To be considered "cruel treatment," the conduct of the accused party must rise to such a level as to render the couple's living together insupportable. *Henry v. Henry*, 48 S.W.3d 468,

473 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *see also* Tex. Fam. Code Ann. § 6.002. "Insupportable," for purposes of "cruel treatment," means incapable of being borne, unendurable, insufferable, or intolerable. *Henry*, 48 S.W.3d at 473. Mere trivial matters or disagreements do not justify the granting of divorce for cruel treatment. *Id.* at 474.

In support of his position, Carlton states that the only time Kishon made a police report was when she alleged that he had taken her cell phone, which he returned. The police report, which was admitted into evidence, stated:

> There was a disturbance that could be heard from outside the home. Male and female were having a disagreement over Instagram. No physical violence only verbal. Both were emotionally stressed. They were advised to separate for the evening.

He also asserts that Kishon was not able to identify any specific act which amounted to cruelty. But, Kishon testified that there had been some tumultuous issues between them during the marriage; the police had been called; and they had been to counseling. Kishon also testified that Carlton at times had been "physically violent" and they had discussed Carlton going to anger-management classes. Moreover, Carlton stated in a text: "I'm taking classes on anger management and domestic violence."

Under the applicable standards of review, we conclude that the evidence is legally and factually sufficient to support the trial court's finding of cruelty. *See Henry*, 48 S.W.3d at 473–75. We overrule Carlton's third issue.

**D.     Whether the Trial Court Abused its Discretion by Denying Carlton's Motion to Strike Kishon's First Amended Petition**

In his fourth issue, Carlton contends that the trial court abused its discretion by overruling and denying his objection, to and motion to strike, Kishon's first amended petition for divorce.

14

A party may amend pleadings up to seven days before trial. Tex. R. Civ. P. 63. After the time for filing amended pleadings has passed, the trial court abuses its discretion in denying leave to file an amended pleading unless (1) the party opposing the amendment presents evidence of surprise or prejudice, or (2) the amendment is prejudicial on its face because it contains a new claim or defense, and the opposing party objects to the amendment. *Tony's Barbeque & Steakhouse, Inc. v. Three Points Invs., Ltd.*, 527 S.W.3d 686, 691–92 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (quoting *In re Mem'l Park Condo Ass'n*, No. 14-11-00818-CV, 2011 WL 4452834, at *1 (Tex. App.—Houston [14th Dist.] Sept. 27, 2011, orig. proceeding) (mem. op.)). An amendment is not prejudicial solely because it contains a new claim. *Id.* at 692. An amendment is prejudicial on its face if (a) it contains new substantive matter that reshapes the nature of the trial itself; (b) the opposing party could not have anticipated it in light of the development of the case up to the time the amendment was requested; and (c) the opposing party's presentation of its case would be detrimentally affected by the amendment. *Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 64–65 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Kishon attempted to file her first amended petition on July 29, 2016, but her filing was rejected. Kishon successfully filed her first amended petition on August 4, 2016, less than seven days before trial. Kishon raised new issues on wasting of community assets and actual and constructive fraud on the community. Kishon also asked the trial court to reconstitute the community estate to its full value before Carlton's depletion of the estate.

Kishon predicated her fraud and waste claims on Carlton's withdrawal of the funds in the FMC 401(k) account without her knowledge. Kishon informed the trial court that (1) Carlton had received a copy of her amended petition on July 29, 2016,

15

(2) Carlton had produced documents on July 18, 20, 25 and 29, 2016, and August 9, 2016, the day before trial. Kishon argued that she served supplemental requests because she had not received the requested bank records. Kishon told the trial court that it was not until she received "the last batch of bank records that I discovered that there was an amount of money that was on these bank records that was unaccounted for."

Carlton responded that that documents Kishon "relie[d] on were provided to her in March of this year . . . [and] [s]he never raised any issue about these documents until the first mediation on July 20th, and then she still waited nine days after that to file this amended petition[.]" Carlton alleged surprise because Kishon had never raised or disclosed any of the new claims in her answers to discovery. The trial court determined that the claims raised in Kishon's first amended petition were not a surprise to Carlton.

Carlton asserts that, if Kishon had disclosed her new claims earlier in the case, he would have had the opportunity to investigate and prepare his defenses. He further argues that Kishon's new claims reshaped the nature of the trial because her fraud and waste claims required him to spend a substantial amount of time cross-examining her on these allegations and then attempting to recall all of the circumstances surrounding the withdrawal of the FMC 401(k) account funds and to provide an impromptu accounting of how the money was spent. Carlton also claims that he could not have anticipated the new claims given the development of the case up to the time of the amendment.

A review of the testimony shows that Carlton was able to cross-examine Kishon about her knowledge of the 401(k) account. Moreover, Carlton did not seem to have any trouble recalling the circumstances of cashing out the 401(k) account. Carlton has not shown that the Kishon's first amended petition was prejudicial to

him, that is, the amended petition did not detrimentally affect the presentation of his case. Nor has Carlton presented evidence of surprise. Therefore, the trial court did not abuse its discretion by impliedly finding that Carlton did not show surprise or prejudice and by impliedly finding that the amendment was not prejudicial on its face. *See Tanglewood Homes Ass'n, Inc.*, 436 S.W.3d at 64–65. Carlton has not shown that the trial court abused its discretion by denying his motion to strike Kishon's first amended petition. *See id*. We overrule Carlton's fourth issue.

Having overruled all of Carlton's issues, we affirm the trial court's judgment.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Busby and Wise.

17