

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-19-00736-CV

Robyn Lynn **SHALIT**,
Appellant, Cross-Appellee

v.

Michael Lawrence **SHALIT**,
Appellee, Cross-Appellant

From the 451st Judicial District Court, Kendall County, Texas
Trial Court No. 11-177
Honorable Kirsten Cohoon, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Irene Rios, Justice

Delivered and Filed: March 16, 2022

AFFIRMED IN PART, REVERSED IN PART, REMANDED

This is an appeal and a cross-appeal from a final decree of divorce. After a bench trial, the

trial court divided the community property, and both parties complain about the division.

We affirm the parties' divorce, but because the trial court's mischaracterization of some of

the community property was of sufficient magnitude to affect the just and right division, we reverse

the trial court's division of the community estate and its award of spousal maintenance.

We remand the cause to the trial court for a just and right division of the community estate based on the correct characterization of the property and a corresponding reevaluation of any award for spousal maintenance.

BACKGROUND

**A.      Relevant Facts**

The community estate the trial court divided largely derived from the varied businesses of Cross-Appellant/Appellee Michael Lawrence Shalit and Appellant/Cross-Appellee Robyn Lynn Shalit, including some real estate investments in New Jersey and Texas.

*1.      Michael's Marriage to Iris, Divorce*

Before Michael married Robyn, he was married to Iris, and they had three children: Kimberly, Lance, and Dawn. While Michael and Iris were married, they acquired several real estate properties. When Michael and Iris divorced, the trial court awarded some of the properties as separate property to Michael.

*2.      Michael's Marriage to Robyn, Divorce*

In 1995, while they were living in New Jersey, Michael and Robyn married, and they had two children together: Lynzara and Austin.[1] At times, Michael did business as Kimberly Investment Company; he also owned interests in several other businesses including BGS Realty, a New Jersey partnership. Michael continued his real estate investment businesses, and Robyn had some other business interests. One of Michael's real estate deals involved purchasing two tracts of land: a 61.23-acre tract and a 4-acre tract. Later, the couple moved to Texas, and in 2011, Robyn sued Michael for divorce.

---

[1] Michael and Robyn had two children together, but by the time Michael and Robyn's divorce became final, both children were adults.

### 3. Eight-Year Divorce Proceedings

Because of the complexity of the estate, the trial court appointed Gary Davidson as an independent auditor in late 2012. The eight-year period of the divorce proceedings is explained in part by ongoing discovery battles, delays due to one of Michael's attorney's physical and mental health, and other attorneys coming onto and leaving Michael's legal team.

After the November 2018 election, the judge changed on January 1, 2019, and the new trial court (the Honorable Kirsten Cohoon), set the case for trial. The five-day bench trial was held in March 2019, and the trial court signed a letter ruling, with findings of fact, on May 1, 2019.

As requested, the trial court made some findings of fact, including that Michael intentionally concealed or hid assets, failed to timely provide documents, failed to disclose assets, and failed to provide financial support to Robyn as ordered. There were post-trial hearings challenging some of the trial court's findings, and the court did not sign a final decree until July 19, 2019. The final decree divided the community estate and awarded Robyn spousal maintenance.

## B. Parties' Arguments

Robyn and Michael each challenge aspects of the final decree.

Appellant Robyn raises three issues. She argues that the trial court abused its discretion when it (1) mischaracterized some community property as Michael's separate property, (2) included in the divorce decree a different separate property provision than the one she requested, and (3) ordered a division of the property that was not just and right.

Cross-Appellant Michael raises six issues. He argues the trial court abused its discretion when it (1) denied him due process of law, (2) improperly struck his reimbursement claims, (3) ordered a division that was not just and right, (4) unlawfully divided assets owned by third parties, (5) awarded some of his separate property to Robyn, and (6) awarded Robyn spousal maintenance.

We begin with Robyn's first issue.

**ROBYN'S FIRST ISSUE: PROPERTY DIVISION**

Robyn argues that the trial court abused its discretion in dividing the community estate. Specifically, in four subissues, she argues that the trial court abused its discretion when it did the following: (1) found the 61.23-acre and 4-acre tracts to be 62.5% community property—instead of 100% community property, (2) failed to properly divide the $1,924,000 Michael received from the sale of the 61.23-acre tract, (3) failed to find that the $225,467 interest earned on the loan of the 61.23-acre tract's sale proceeds was community property, and (4) failed to award Robyn her reimbursement claim of $202,604 for her contributions to BGS Realty.

Michael responds that the trial court acted within its discretion for the following reasons: (1) BGS Realty owned the two tracts, the trial court found 62.5% of BGS Realty was community property, and thus the trial court's finding that the two tracts were 62.5% community property is supported by sufficient evidence; (2) the limited and inconsistent evidence made it difficult to characterize the sale proceeds, but because BGS Realty owned the two tracts, the trial court did not abuse its discretion when it found that 62.5% of "any funds received from the sale of any property held by [BGS Realty]" would be community property; (3) the loan interest earned was derived from the sale proceeds, so the interest was also properly characterized as 62.5% community property; and (4) Robyn's live pleading did not expressly identify her $202,604 reimbursement claim, and the trial court's decision to not award Robyn's claimed amount was within its discretion.

Before we address Robyn's first issue, we briefly recite the standards of review and applicable law.

**A.**     **Standards of Review**

"The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. . . ."  *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *accord Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011).

"A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision."  *Roberts v. Roberts*, 531 S.W.3d 224, 232 (Tex. App.—San Antonio 2017, pet. denied) (quoting *Garza v. Garza*, 217 S.W.3d 538, 549 (Tex. App.—San Antonio 2006, no pet.)).

But in the underlying sufficiency of the evidence review, if the evidence conclusively establishes the opposite of a trial court's finding, the evidence supporting the finding is legally insufficient.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 814 (Tex. 2005) (noting factfinders "are not free to reach a verdict contrary to [conclusive] evidence"); *see also Regal Fin. Co., Ltd. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010).

And a finding based on legally insufficient evidence is an abuse of discretion.  *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) ("It is an abuse of discretion for a trial court to rule . . . without supporting evidence." (citations omitted)); *Garza*, 217 S.W.3d at 549.

**B.**     **Applicable Law**

"Property possessed by either spouse during or on dissolution of marriage is presumed to be community property."  TEX. FAM. CODE ANN. § 3.003(a); *accord Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (per curiam); *Garza*, 217 S.W.3d at 548.  "The degree of proof necessary to establish that property is separate property is clear and convincing evidence."  TEX. FAM. CODE ANN. § 3.003(b); *accord Pearson*, 332 S.W.3d at 363; *Garza*, 217 S.W.3d at 548.

"Parties claiming certain property as their separate property have the burden of rebutting the presumption of community property."  *Pearson*, 332 S.W.3d at 363 (citing *McKinley v.*

*McKinley*, 496 S.W.2d 540, 543 (Tex. 1973)). "[A]s a general rule, mere testimony that property was purchased with separate funds, without any tracing of the funds, is insufficient to rebut the community presumption." *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.) (citing *Bahr v. Kohr*, 980 S.W.2d 723, 728 (Tex. App.—San Antonio 1998, no pet.)).

## C.     Disputed Ownership of Two Tracts

In her first subissue, Robyn argues that the trial court erroneously found that BGS Realty, a partnership the trial court found to be 62.5% community property, owned the 61.23-acre and 4-acre tracts. Robyn insists that Michael's personal DBA, Kimberly Investment Company—not BGS Realty—purchased the two tracts at the foreclosure sale. Thus, she argues, her contention that BGS Realty did not own the two tracts and that the tracts are 100% community property is supported by conclusive evidence.

### 1.     *Evidence of Tracts Ownership*

It is undisputed that the 61.23-acre and 4-acre tracts were owned by another entity before the two tracts were foreclosed, and the foreclosure occurred while Michael and Robyn were married. Michael's sixth (and last) amended inventory shows the two tracts were "foreclosed on by Michael Shalit," and it lists the two tracts' ownership as 10% his children's separate property and 90% as his (Michael's) separate property.

### 2.     *Respondent's Exhibit 35 (RX-35)*

On the second day of trial, Michael testified that he purchased the two tracts at a foreclosure sale, and although he meant to put the properties into Shalit BHL, he "mistakenly conveyed" them to BGS Realty. *Cf. Boyd*, 131 S.W.3d at 612 (noting that "mere testimony that property was purchased with separate funds, without any tracing of the funds, is insufficient to rebut the community presumption").

Notably, at the beginning of the fourth day of trial, shortly before both sides rested, Robyn advised the court that "we have a matter that the parties agreed on, so before we start today[,] we would like to just get them into evidence to speed things up."

Robyn continued: "[W]e're going to try to use [our agreed documents] as a summary to try to facilitate the Court's review of different critical issues in the case." Robyn offered Petitioner's Exhibits No. 31 and 31-1, which contained standing orders in the case, and they were admitted without objection.

Next, Michael's attorney offered Respondent's Exhibit No. 35: "[W]e also have agreed about Respondent's Exhibit No. 35." Respondent's Exhibit No. 35 (RX-35)—to which the parties agreed—was admitted without objection. RX-35 shows the two tracts as 100% community property.

### 3.    Conclusive Evidence

The two tracts were acquired during the marriage, and there are no other factors that prevent the community presumption from applying. *See* TEX. FAM. CODE ANN. § 3.003(a); *Pearson*, 332 S.W.3d at 363. Thus, Michael's burden at trial was to overcome the presumption by clear and convincing evidence. *See Pearson*, 332 S.W.3d at 363. However, the evidence proved the opposite.

RX-35 designates the two tracts as 100% community property, and that agreed designation is conclusive evidence that the two tracts were 100% community property.[2] *See City of Keller*, 168 S.W.3d at 814 ("[A]n appellate court conducting a legal sufficiency review cannot 'disregard undisputed evidence that allows of only one logical inference.'" (quoting *St. Joseph Hosp. v. Wolff*,

---

[2] In closing argument, Michael (through his lead attorney) admitted that the two tracts were community property.

94 S.W.3d 513, 519–20 (Tex. 2002))); *see also McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 392 (Tex. 2019) (discussing legally insufficient evidence).

This conclusive evidence establishes the opposite of the trial court's findings in paragraphs 5B ("61.23-acre property") and 5C ("4-acre tract") of the Final Decree of Divorce—that the two tracts were 62.5% community property. Thus, the trial court's 5B and 5C findings that the two tracts belonged to BGS Realty were abuses of its discretion. *See City of Keller*, 168 S.W.3d at 814; *Garza*, 217 S.W.3d at 549.

We sustain Robyn's first subissue.

### D.     Division of Sale Proceeds From 61.23-Acre Tract

In her second subissue, Robyn asserts that the trial court failed to properly divide the $1,924,000 Michael received from the sale of the 61.23-acre tract. We agree.

Because the two tracts were 100% community property, the proceeds from the sale of the 61.23-acre tract were also 100% community property. *See Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001) ("Generally, whether property is separate or community is determined by its character at inception . . . ."); *accord Garza*, 217 S.W.3d at 550; *see also* TEX. FAM. CODE ANN. § 3.003 ("Presumption of Community Property").

We sustain Robyn's second subissue.

### E.     Interest on Loan Funds

In her third subissue, Robyn argues the trial court erroneously failed to find that the $225,467 interest earned on the loan of the 61.23-acre tract's sale proceeds were community property. We agree.

The $225,467 in interest on the loan of community property funds from the sale of the 61.23-acre property was earned during the marriage, there was no clear and convincing evidence

of its separate nature, and we conclude it is also 100% community property. *See* TEX. FAM. CODE ANN. § 3.003; *Barnett*, 67 S.W.3d at 111; *Garza*, 217 S.W.3d at 550.

We sustain Robyn's third subissue.

## F.      Reimbursement Claim

In her fourth subissue, Robyn argues (1) her live pleading seeks reimbursement for her contributions to BGS Realty, (2) her claim was included in the auditor's report, and (3) there was evidence to support her claim. Thus, she concludes, the trial court abused its discretion by failing to reimburse her claim. We disagree with her conclusion.

Although the trial court did not include a separate award to Robyn for her reimbursement claim against BGS Realty, the trial court's decision whether to award the claim was "purely an equitable one." *See Vallone v. Vallone*, 644 S.W.2d 455, 458 (Tex. 1982) ("The rule of reimbursement is purely an equitable one."); *Chavez v. Chavez*, 269 S.W.3d 763, 767–68 (Tex. App.—Dallas 2008, no pet.) (citing TEX. FAM. CODE ANN. § 7.007(b)) ("Courts apply equitable principles to determine whether to recognize the claim for reimbursement and to order a division of the claim for reimbursement, if appropriate, in a manner the court considers just and right.").

Like *Knight*, Robyn alleged Michael's fraud on the community estate. *Cf. Knight v. Knight*, 301 S.W.3d 723, 731 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (concluding the trial court's failure to award a reimbursement claim for *uncontroverted amounts* the husband paid from the community estate without the wife's permission was an abuse of discretion).

But unlike *Knight*, there is no evidence of an uncontroverted amount that Michael owed Robyn as a reimbursement. *Cf. id.* at 731–32.

Further, Michael argued that the evidence supporting Robyn's reimbursement claim was neither legally nor factually sufficient, and there was no evidence of the enhancement value as required. *See Vallone*, 644 S.W.2d at 459.

Moreover, because reimbursement is an equitable remedy, *id.* at 458, the trial court had discretion to find no amount due for reimbursement or to find that Robyn had been equitably compensated by other awards, *see* TEX. FAM. CODE ANN. § 7.007; *Chavez*, 269 S.W.3d at 768.

We overrule Robyn's fourth subissue.

**G.     Appropriate Relief**

Although Robyn asks this court to modify the decree to show the two tracts as 100% community property and affirm the decree as modified, we may not.

"[I]f property is mischaracterized and the mischaracterization is of such magnitude that it affects the just and right division of the community estate, we must remand the entire case to the trial court for a just and right division based upon the correct characterization of the property." *Boyd*, 131 S.W.3d at 617; *accord Garza*, 217 S.W.3d at 549.

The record shows the value of the entire community estate was somewhere between $8 and $18 million, and as Robyn's brief notes, the difference between a 62.5% and a 100% community property interest in the two tracts will result in a difference to her of more than $1 million.

Under these facts, we conclude that such an amount is a "mischaracterization . . . of such magnitude that it affects the just and right division of the community estate." *See Boyd*, 131 S.W.3d at 617; *cf. Monroe v. Monroe*, 358 S.W.3d 711, 718 (Tex. App.—San Antonio 2011, pet. denied) (construing as de minimis the trial court's mischaracterization of separate property as community property—where the value of the mischaracterized separate property was less than two percent of the community estate). Therefore, "we [must] remand the entire community estate for a just and right division based upon the correct characterization of the property." *See Garza*, 217 S.W.3d at 551; *Boyd*, 131 S.W.3d at 617.

- 10 -

**ROBYN'S SECOND ISSUE: SEPARATE PROPERTY PROVISION**

In her second issue, Robyn argues the trial court abused its discretion by including a separate property provision that neither party requested rather than the provision the parties had agreed to and the trial court verbally agreed to use.

At a post-trial hearing on Robyn's motion for the trial court to sign a final decree of divorce, Robyn proposed a separate property provision to include in the decree. Michael agreed to the provision, and the trial court stated it would use Robyn's proposed provision. Nevertheless, in the final decree, the trial court included a separate property provision that was different.

At the hearing on Robyn's motion to modify or correct the decree, Robyn asked the trial court to delete the decree's separate property provision, but she abandoned her request to include her previously proposed provision.

Although Robyn complains that the trial court could not have substituted its provision over the one the parties agreed to, Robyn cites no authority to show the trial court's (1) inclusion of the complained-of provision or (2) its refusal to delete it was outside its authority or otherwise an abuse of discretion. We overrule Robyn's second issue.

**ROBYN'S THIRD ISSUE: NOT A JUST AND RIGHT DIVISION**

In her third issue, Robyn argues that the trial court's division was not just and right. We agree. However, because we have already concluded that "we [must] remand the entire community estate for a just and right division based upon the correct characterization of the property," *see Garza*, 217 S.W.3d at 549; *Boyd*, 131 S.W.3d at 617, Robyn's third issue is moot.

**MICHAEL'S FIRST ISSUE: DUE PROCESS VIOLATIONS**

In his first issue, Michael argues he was denied due process because (1) he was denied the right to be heard at a meaningful time and in a meaningful manner, and (2) the striking of his reimbursement claim was a taking of his property rights without due process.

**A.     Applicable Law**

"The Texas Constitution provides that '[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.'" *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001) (quoting TEX. CONST. art. I, § 19).

"Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 658 (Tex. 2004) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

"We review questions raising constitutional concerns *de novo*." *State v. Hodges*, 92 S.W.3d 489, 494 (Tex. 2002) (citing *Perry*, 67 S.W.3d at 91); *accord Scally v. Tex. State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 446 (Tex. App.—Austin 2011, pet. denied) ("We review claims regarding deprivation of constitutional rights de novo because they present questions of law.").

**B.     Right to be Heard**

Michael insists he was denied the right to be heard at a meaningful time and in a meaningful manner for several reasons.

*1.     Previous Judge's Bias or Conflict*

First, Michael argues the previous trial court judge was biased against him, should have recused himself, and the previous judge's errors prevented Michael from having a fair and unbiased judicial proceeding.

Without question, Michael had a right to trial by a fair and impartial jurist, *see Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 749 (Tex. 2006); *Markowitz v. Markowitz*, 118 S.W.3d 82, 86 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see also* U.S. CONST. amend. XIV, § 1; TEX. CONST. art. I, § 19, but he also had to properly present his issues for review.

In his complaints, Michael cites to six volumes of the reporter's record in their entireties, but he does not identify any specific ruling or rulings that demonstrate the trial court's bias, and we will not—and may not—scour multiple volumes of the record in search of some ruling that might support Michael's due process complaints. *See Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("It would be inappropriate for this court to speculate as to what appellant may have intended to raise as an error by the trial court on appeal. To do so would force this court to stray from our role as a neutral adjudicator and become an advocate for appellant." (citation omitted)).

It was Michael's burden to identify to this court the trial court's specific rulings which he claims were erroneous, but he has not. *See* TEX. R. APP. P. 38.1(i); *Canton-Carter*, 271 S.W.3d at 931; *cf. Markowitz*, 118 S.W.3d at 87 ("Only in the rarest circumstances are judicial rulings demonstrative of the degree of favoritism or antagonism required to show that a fair and impartial trial is impossible."). Nor does Michael identify any motion to recuse that he presented that was improperly denied. *See* TEX. R. CIV. P. 18a (recusal); 18b (grounds for recusal); *Markowitz*, 118 S.W.3d at 86–88.

Michael's brief failed to adequately present these points, *see* TEX. R. APP. P. 38.1(i), and he failed to preserve his complaints for appellate review, *see* TEX. R. APP. P. 33.1(a); *In re G.X.H.*, 627 S.W.3d 288, 294 (Tex. 2021) (citing TEX. R. APP. P. 33.1(a)) ("[W]ith limited exceptions, a party cannot obtain reversal of a trial court's judgment on appeal based on an error that was never raised in the trial court.").

### 2. Lead Attorney's Illness

Second, Michael asserts that his lead attorney's physical and mental illnesses prevented him from "actively participating in the litigation process," appearing for hearings, timely responding to discovery, and developing Michael's case.

It is undisputed that this lead attorney, now deceased, suffered periods of physical and mental illness during the years he represented Michael. But the record also conclusively establishes that at other times during his representation, this lead attorney actively participated in the litigation process including appearing for hearings, responding to discovery, preparing trial exhibits, and serving as lead counsel throughout trial. Further, in some of the pretrial hearings, throughout trial, and in post-trial hearings, other counsel assisted this lead attorney.

Assuming without deciding that Michael's brief adequately presented these points, *see* TEX. R. APP. P. 38.1(i), we nevertheless conclude that Michael has not shown how his once lead attorney's intermittent periods of illness denied Michael the right to be heard at a meaningful time and in a meaningful manner. *See Tex. Workers' Comp. Comm'n*, 136 S.W.3d at 658; *Perry*, 67 S.W.3d at 92.

### 3. Inadequate Time to Prepare

Third, Michael argues that the trial court refused to allow co-counsel Christopher J. Byrd adequate time to prepare for trial.

The record shows Mr. Byrd entered an appearance in the case almost six weeks before trial, but he asked that the matter be continued for a period of six months—to conclude a pending guardianship case pertaining to Robyn. The trial was not continued, and on the first day of trial, Michael did not move for a continuance. To the contrary, the lead attorney, with Mr. Byrd present, announced ready for trial.

On this point, Michael failed to preserve his claim of error, and he "cannot obtain reversal of [the] trial court's judgment on appeal based on an error that [he] never raised in the trial court." *See In re G.X.H.*, 627 S.W.3d at 294 (citing TEX. R. APP. P. 33.1(a)).

### 4. No Reconsideration of Previous Rulings

Fourth, Michael contends the trial court "refused to allow for the revisiting of legal matters previously enter[t]ained/decided by the court during the time before Mr. Byrd began representing MLS."

For support, Michael's brief cites the eight volumes of the reporter's record covering the entire trial, but he does not identify any specific ruling that he objected to and for which he preserved a claim of error. *See* TEX. R. APP. P. 33.1(a) (error preservation); *In re G.X.H.*, 627 S.W.3d at 294; *Hall v. Stephenson*, 919 S.W.2d 454, 466 (Tex. App.—Fort Worth 1996, writ denied) ("An appellant has the duty to show that the record supports her contentions and to point to the supporting places in the record.").

Assuming without deciding that Michael's brief adequately presented this point, *see* TEX. R. APP. P. 38.1(i), we nevertheless conclude that Michael failed to preserve his complaint for appellate review, *see In re G.X.H.*, 627 S.W.3d at 294 (citing TEX. R. APP. P. 33.1(a)).

### 5. Dividing Third-Party Properties

Finally, Michael argues he was denied due process because the final divorce decree divides property owned by third parties that were never properly before the trial court.

In his brief, Michael argues that the trial court divided property owned by BGS Realty, a New Jersey partnership, and BGS Realty was not joined in the suit.

But as Michael admitted, there was a 62.5% community property interest in the BGS Realty partnership, and the trial court had the authority to divide that community interest. *See* TEX. FAM. CODE ANN. § 7.001; *Lifshutz v. Lifshutz*, 61 S.W.3d 511, 518 (Tex. App.—San Antonio 2001, pet. denied).

The community interest divided by the divorce decree is described in paragraph 5—which finds that "Sixty-Two and one-half percent (62.5%) of BGS Realty, ('BGS'), plus any funds

received from the sale of any property held by the entity during the pendency of these divorce proceedings" was community property. The paragraph then lists three properties that the trial court found BGS Realty owned during that period: (1) a "20,000 sq. ft. commercial building," (2) a "61.23-acre property," and (3) a "4-acre tract of land."[3] The paragraph's concluding sentence orders "that the Parties are each awarded one-half (50%) of the Sixty-Two and one-half percent (62.5%) interest in the above referenced."

Assuming without deciding that Michael properly briefed this point, we agree that the trial court could not divide any individual property owned by BGS Realty. *See* TEX. BUS. ORGS. CODE ANN. § 152.101 ("Partnership property is not property of the partners. A partner or a partner's spouse does not have an interest in partnership property."); *id.* § 154.001 ("A partner is not a co-owner of partnership property."); *Siller v. LPP Mortg., Ltd.*, 264 S.W.3d 324, 329 (Tex. App.—San Antonio 2008, no pet.).

Nevertheless, as Michael acknowledges, the trial court had authority to divide the 62.5% community property interest in the partnership. *See, e.g.*, *Lifshutz*, 61 S.W.3d at 518.

To the degree that there was any ambiguity in this provision of the decree, we construe it to divide the 62.5% community property interest in the partnership, not the partnership property itself. *See Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003) ("[I]f a judgment is ambiguous—that is, subject to more than one reasonable interpretation—courts should adopt the construction that correctly applies the law.").

We overrule each of Michael's due process arguments discussed above.

---

[3] As we previously determined, the 61.23-acre and 4-acre tracts were 100% community property; they were not partnership property of BGS Realty.

**C.** **Striking Separate Property Reimbursement Claims**

In the second part of his first issue, Michael argues that the pretrial striking of his reimbursement claims as a sanction was a taking of his property rights without due process.

Next, in the first part of his second issue, Michael argues that the trial court abused its discretion by not awarding him his reimbursement claims.

Because they are interrelated, and for brevity, we will consider Michael's reimbursement claims arguments together.

### MICHAEL'S SECOND ISSUE: REIMBURSEMENT CLAIMS, ATTORNEY'S FEES

In the second part of his first issue and the first part of his second issue, Michael complains about the trial court's actions in first striking and then not awarding his reimbursement claims.

**A.** **Reimbursement Claims Complaints**

*1. Michael's Arguments*

Michael contends that, before trial, when the trial court struck his reimbursement claims as sanctions and ordered him to pay some of Robyn's attorney's fees, it abused its discretion. He argues that the trial court did not consider any evidence before it struck his reimbursement claims, and he was not permitted to present his reimbursement claims at trial. He insists that the merits of striking his reimbursement claims were never adjudicated, which makes the final decree merely interlocutory and not a final judgment.

*2. Robyn's Arguments*

Robyn responds that Michael's reimbursement claims were struck only after he repeatedly failed to comply with the trial court's orders by, inter alia, failing to produce documents. She notes that although Michael's reimbursement claims were justifiably struck as a sanction, Michael still presented evidence and testimony about his claims at trial, and they were considered by the court.

She concludes that the trial court had discretion to not award Michael his reimbursement claims, and based on the record, the trial court acted within its discretion.

### 3. Additional Background

Before trial, recognizing the complexity of the estate, the trial court appointed Gary Davidson, CPA, as an independent auditor.

In his objections to Davidson's affidavit, Michael described his reimbursement claims against the community estate, which he totaled at $3,174,767. In his supplemental original counter-petition for divorce, Michael sought reimbursement for those claims. However, during discovery, Michael repeatedly failed to produce documents as ordered—despite the trial court's warning that it would strike Michael's reimbursement claims if he did not comply. When Michael eventually failed to comply, the trial court struck Michael's reimbursement claims.

Nevertheless, on the first day of trial, Michael proffered Davidson's document titled "Michael Shalit's Separate Property Reimbursement Claims Summary" (RX-3).

Robyn objected to the exhibit and advised the trial court that "there's been a ruling about striking the reimbursement claim."

The trial court responded: "I understand that . . . [but] I'm going to admit this, let this come into evidence, but I do so acknowledge your objection on that and understand that as well."

After RX-3 was admitted, Michael asked Davidson numerous questions about the information contained in the claims summary.

On the second day of trial, Michael again referred to RX-3, Michael's reimbursement claims summary, and he began to ask Davidson more questions about the reimbursement claims.

Robyn again objected, and the trial court responded: "Understood, but you brought it up, too. So we talked a lot about that reimbursement claim as well . . . ."

Michael continued his questioning, and Davidson noted that he totaled Michael's reimbursement claims at $3,089,767. When asked about the reimbursement claims' supporting information, Davidson stated "I think we had sufficient documentation to support [portions of the reimbursement claims], but the question, of course, still remains as to what value those were." Davidson continued: "So the enhancement issue related to that portion of [the reimbursement claim] was still—or as far as I know is still up in the air today."

### 4. Applicable Law

"A claim for reimbursement is an equitable claim arising upon dissolution of a marriage when funds from one marital estate have been expended to benefit another marital estate." *Roberts v. Roberts*, 402 S.W.3d 833, 838 (Tex. App.—San Antonio 2013, no pet.) (citing *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982)).

"The party claiming the right of reimbursement has the burden of pleading and proving that the expenditures and improvements were made and that they are reimbursable." *Hinton v. Burns*, 433 S.W.3d 189, 195 (Tex. App.—Dallas 2014, no pet.) (quoting *Vallone*, 644 S.W.2d at 459).

"The degree of proof necessary to establish that property is separate property is clear and convincing evidence." TEX. FAM. CODE ANN. § 3.003; *accord Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011). "Thus, a spouse making a claim for reimbursement on behalf of a separate estate must prove by clear and convincing evidence that the funds expended on behalf of the community estate were separate funds." *Hinton*, 433 S.W.3d at 196; *accord Henry v. Henry*, 48 S.W.3d 468, 477 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

Further, "[t]he rule of reimbursement is purely an equitable one." *Vallone*, 644 S.W.2d at 458; *see* TEX. FAM. CODE ANN. § 3.402 ("The court shall resolve a claim for reimbursement by using equitable principles . . . ."). In dividing a community estate, "[c]ourts apply equitable

principles to determine whether to recognize the claim for reimbursement and to order a division of the claim for reimbursement, if appropriate, in a manner the court considers just and right." *Chavez v. Chavez*, 269 S.W.3d 763, 767–68 (Tex. App.—Dallas 2008, no pet.) (citing TEX. FAM. CODE ANN. § 7.007 ("Disposition of Claim for Reimbursement")).

"The discretion to be exercised in evaluating a claim for reimbursement is equally as broad as that discretion subsequently exercised by the trial court in making a 'just and right' division of the community property." *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988); *accord Chavez*, 269 S.W.3d at 768; *see Vallone*, 644 S.W.2d at 459 ("Reimbursement is not available as a matter of law, but [it] lies within the discretion of the court.").

5.      *Disposition of Michael's Reimbursement Claims*

The record shows that about eleven months before trial, the trial court struck Michael's reimbursement claims as a sanction. However, even if such a pretrial sanction was error, the error was harmless because Michael's reimbursement claims were tried.

a.      <u>Due Process Complaint</u>

The record also shows that Michael received notice of the trial setting, and as the trial on the merits began, Michael announced ready and deferred his opening statement. Thereafter, Robyn gave her opening statement, and testimony began. *See Joseph v. Jack*, 624 S.W.3d 1, 12 (Tex. App.—Houston [1st Dist.] 2021, no pet.) ("Generally, the right to be heard includes the rights to a full and fair hearing before a court with jurisdiction, to introduce evidence and examine witnesses, and to have judgment rendered only after a trial on the merits." (citing *Soefje v. Jones*, 270 S.W.3d 617, 625 (Tex. App.—San Antonio 2008, no pet.))).

Over Robyn's objections, the trial court admitted Davidson's summary of Michael's reimbursement claims, which effectively granted Michael's previous motion to reconsider the sanctions order. The trial court then heard testimony elicited from Davidson by Michael to support

Michael's reimbursement claims, including Davidson's opinion of the nature of a $1,050,000 capital contribution or loan, about which Robyn had earlier questioned Davidson. *Cf. id.*

Because the record establishes that the merits of Michael's reimbursement claims were presented to, and heard by, a court of proper jurisdiction where he introduced evidence and examined witnesses, *see Soefje*, 270 S.W.3d at 625, we conclude that Michael was not denied due process of law with respect to his reimbursement claims. *See Tex. Workers' Comp. Comm'n*, 136 S.W.3d at 658; *Perry*, 67 S.W.3d at 92.

> b.  <u>Evidence for Reimbursement Claims</u>

In evaluating the evidence and the testimony, the trial court was the factfinder, *see Matter of Marriage of Thrash*, 605 S.W.3d 224, 229 (Tex. App.—San Antonio 2020, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)), and its findings are subject to our review, *Monroe v. Monroe*, 358 S.W.3d 711, 716 (Tex. App.—San Antonio 2011, pet. denied).

Having reviewed the evidence, we conclude that it does not conclusively establish Michael's claims, nor is the contrary evidence so strong that the trial court's finding was against the great weight and preponderance of the evidence. *See Roberts v. Roberts*, 531 S.W.3d 224, 232 (Tex. App.—San Antonio 2017, pet. denied); *Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.). We also conclude that the trial court could have found that Michael did not meet his evidentiary burden to prove his reimbursement claims. *See Hinton*, 433 S.W.3d at 196; *Henry*, 48 S.W.3d at 477.

> c.  <u>Other Complaints</u>

Further, even if the trial court had found that Michael met the evidentiary burden for his reimbursement claims, it was still within the trial court's broad discretion to not award Michael his claimed amount based on the trial court's determination of a just and right division of the community estate. *See* TEX. FAM. CODE ANN. § 3.402 (requiring a reimbursement claim to be

resolved using equitable principles); *id.* § 7.007 (authorizing the trial court to divide a reimbursement claim "in a manner the court considers just and right"); *Penick*, 783 S.W.2d at 198 (trial court's broad discretion); *Vallone*, 644 S.W.2d at 459.

And finally, although Michael's reimbursement claims were not awarded, they were adjudicated: The final decree orders "that all relief requested in this case and not expressly granted is denied." *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 198 (Tex. 2001).

We overrule Michael's complaints about his reimbursement claims.

## B. Attorney's, Expert's Fees

In the second part of his second issue, Michael argues that the trial court had no statutory authority to order him to pay Robyn's pretrial attorney's fees—which he did not pay—and the final decree's order for him to pay Robyn's attorney's fees and the fee for her accountant expert are, in effect, punitive and excessive sanctions. We disagree with Michael's view.

### 1. *Applicable Law*

"[T]he trial court [has discretion] in determining the proper division of the community estate of the parties . . . . The attorney's fee is but a factor to be considered by the court in making an equitable division of the estate, considering the conditions and needs of the parties and all of the surrounding circumstances." *Tedder v. Gardner Aldrich, LLP*, 421 S.W.3d 651, 656 (Tex. 2013) (alterations in original) (quoting *Carle v. Carle*, 234 S.W.2d 1002, 1005 (Tex. 1950)); *accord Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981) (also quoting *Carle*).

### 2. *Fees Award as Part of Just and Right Division*

In the trial court's Final Decree of Divorce, under the heading "Debts to Respondent from Prior Court Orders," the decree states that "prior rulings of the Court must be enforced and imposed upon [Michael] as final orders in this Final Decree of Divorce." The decree then orders Michael

to pay Robyn's attorneys $96,800 in attorney's fees and Robyn's accountant expert $66,000 for his fee.

Michael argues these awards are punitive and excessive sanctions, but the final decree does not state that these fees were awarded as sanctions; it refers to them as debts from prior court orders.

In prior court orders, the trial court ordered Michael to pay Robyn's interim attorney's fees and expert fees—based on Robyn's assertion that she was "not in control of sufficient community assets to pay attorney's fees and anticipated expenses."  Despite Robyn's requests and the trial court's orders, Michael did not pay the fees as ordered.  Thus, when the trial court rendered its final decree to divide the community estate, it had discretion to award Robyn's expert's and attorney's fees as part of a just and right division.  *See Tedder*, 421 S.W.3d at 656; *Murff*, 615 S.W.2d at 699.

We conclude the trial court did not abuse its discretion, and we overrule Michael's attorney's and expert's fees complaints.

### MICHAEL'S THIRD ISSUE: DIVISION NOT JUST AND RIGHT

In his third issue, Michael argues the trial court's division of the community estate was not just and right, but he failed to meet his burden to show the trial court abused its discretion.

### A.     Challenging, Reviewing Just and Right Division

"The trial court has wide discretion in dividing the estate of the parties and that division should be corrected on appeal only when an abuse of discretion has been shown."  *Murff*, 615 S.W.2d at 698; *accord Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998); *see* TEX. FAM. CODE ANN. § 7.001.  To demonstrate that the trial court abused its discretion, "[t]he party attacking the property division bears the heavy burden of showing that the trial court's property division was

not just and right." *Walter v. Walter*, 127 S.W.3d 396, 398 (Tex. App.—Dallas 2004, no pet.); *accord Pletcher v. Goetz*, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied).

In our review of the division, "[w]e must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion in dividing marital property." *Boyd v. Boyd*, 131 S.W.3d 605, 610 (Tex. App.—Fort Worth 2004, no pet.) (citing *Pletcher*, 9 S.W.3d at 446).

## B. Michael's Arguments

Michael first complains that the trial court created a "double recovery" for Robyn because it awarded Robyn (1) "half of the funds used to acquire the Ohio Development option [and] half of the option itself," and (2) "half of the funds used to acquire the house . . . at 127 Cibolo Basin [and] half of the interest in the house itself."

Michael next complains that the trial court made a disproportionate award by awarding Robyn (1) 100% ownership of a Mercedes Benz automobile and the marital home and (2) 50% ownership in approximately 11.47 acres in Tapatio Springs and the loan proceeds from Amboy Bank, but assigning all the corresponding debt to Michael, except for Robyn's one-half of the mortgage on the marital home.

Finally, Michael complains that the trial court exacerbated the disproportionate award by awarding Robyn an amount equal to half of the attorney's fees Michael incurred for the divorce.

## C. Division Within Discretion

Michael's "heavy burden" is to show the division was not just and right, *see Walter*, 127 S.W.3d at 398; *Pletcher*, 9 S.W.3d at 446; merely showing that the property division was disproportionate is not enough. *See* TEX. FAM. CODE ANN. § 7.001 (just and right division); *Schlueter*, 975 S.W.2d at 588 (recognizing that the "[just and right] standard may at times lead to a disproportionate division of assets and liabilities of the parties, depending on the circumstances that courts may consider in refusing to divide the marital estate equally").

Michael's brief includes some generalized statements of the law about dividing community property and disproportionate divisions, but he does not present any cases to show how the overall division was not just and right given the facts in this case—including his uncontroverted net worth of more than three times the value of the entire community estate, the disparities of their respective incomes and earning capacities, and other relevant circumstances. *Cf. Schlueter*, 975 S.W.2d at 588; *Murff*, 615 S.W.2d at 698–99.

Given that "[w]e must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion in dividing marital property," *Boyd*, 131 S.W.3d at 610, we cannot conclude that Michael met his burden to show the trial court's division was an abuse of discretion, *see Schlueter*, 975 S.W.2d at 588–89; *Murff*, 615 S.W.2d at 698–99.

We overrule Michael's third issue.

### MICHAEL'S FOURTH ISSUE: PROPERTY CHARACTERIZATION

In his fourth issue, Michael argues the trial court erred in dividing property owned by BGS Realty; Shalit-BHL, LLC; and other entities.

**A.      BGS Realty Property**

In his first subissue, Michael repeats his complaint that the trial court divided BGS Realty partnership property, but we have already considered and rejected this argument.

As we noted in our disposition of the last part of Michael's first issue, the trial court had authority to divide the 62.5% community property interest in the partnership. *See, e.g.*, *Lifshutz v. Lifshutz*, 61 S.W.3d 511, 518 (Tex. App.—San Antonio 2001, pet. denied). And we construed the decree to divide the 62.5% community property interest in the partnership, not the partnership property itself. *See Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003).

**B.      Shalit-BHL, LLC Property**

In his second subissue, Michael argues that the trial court erred when it awarded Robyn one-half of 62.5% of the $776,000 because (1) those funds belonged to Shalit-BHL, LLC (BHL), which was 99% Michael's separate property and 1% Robyn's separate property, and (2) the only evidence presented at trial was that the funds belonged to BHL.

As Michael asserts, the record establishes that Shalit-BHL, LLC was 99% Michael's separate property and 1% Robyn's separate property.   However, Michael's assertion that the $776,000 belonged to BHL is not supported by the record.  Specifically, Michael cites to testimony by David Owens, Robyn's expert witness CPA, and to Owens's final report.

In his final report, Owens shows the $776,000 as "[u]nlocated sales proceeds" from the sale of the 61.23-acre tract.  In his testimony, Owens stated that "we haven't had an accounting for this $776,000, and we feel that the community is owed that."

Thus, the evidence contradicts Michael's assertion that the $776,000 belonged to BHL.

Further, contrary to Michael's assertion that the trial court divided BHL's assets, the trial court did not find that the $776,000 belonged to BHL, and the final decree's only mention of BHL is to confirm Robyn's 1% separate property interest in it.

**C.      Other Entities' Assets**

In his third subissue, Michael argues that the trial court erred in dividing assets belonging to thirteen other family-owned business entities, including partnerships and LLCs.  He insists "that instead of making a determination of the marital estate's ownership in each entity and then dividing the same, the trial court made an award of the entity's assets directly."  We disagree.

To begin, Michael does not identify any other entity's asset that the final decree directly awards: His blanket assertion lacks even a single specific example.  *Cf. King v. Wells Fargo Bank,*

*N.A.*, 205 S.W.3d 731, 734–35 (Tex. App.—Dallas 2006, no pet.) (noting that appellants had "the burden of directing us to the evidence in the record that supports their contentions").

Next, the decree does exactly what Michael argues it should have done. For each entity, the decree states the community property interest in that entity, and then it awards Robyn and Michael each "a one-half (50%) interest" in the community property interest in that entity.

Michael's argument on this subissue, if not waived, is unavailing.

Having considered each of its subissues, we overrule Michael's fourth issue.

**MICHAEL'S FIFTH ISSUE: DIVIDING SEPARATE PROPERTY**

In his fifth issue, Michael argues the trial court erred when it implicitly mischaracterized Kimberly Investment Company, LLC as community property and then divided it between him and Robyn. We agree.

On the fourth day of trial, the parties agreed to offer "evidence to speed things up . . . to use as a summary to try to facilitate the Court's review of different critical issues in the case." One of the agreed exhibits was Respondent's Exhibit No. 35 (RX-35).

RX-35, the agreed summary, shows Kimberly Investment Company, LLC as 99% Michael's separate property and 1% Robyn's separate property. RX-35 is conclusive evidence of the separate property character of Kimberly Investment Company, LLC, and the trial court erred in awarding Michael and Robyn "a one-half (50%) interest in [Kimberly Investment Company, LLC]."

However, as we explained in addressing Robyn's first issue, we are already remanding "the entire case to the trial court for a just and right division based upon the correct characterization of the property" because the mischaracterization of the two tracts is one "of such magnitude that it affects the just and right division of the community estate." *See Boyd*, 131 S.W.3d at 617; *see also Monroe v. Monroe*, 358 S.W.3d 711, 718 (Tex. App.—San Antonio 2011, pet. denied); *Garza v.*

*Garza*, 217 S.W.3d 538, 549 (Tex. App.—San Antonio 2006, no pet.). Thus, in making a new division, the trial court must use the correct characterizations, including Michael's and Robyn's separate property interests in Kimberly Investment Company, LLC. *See Boyd*, 131 S.W.3d at 617; *see also Garza*, 217 S.W.3d at 549.

We sustain Michael's fifth issue.

### MICHAEL'S SIXTH ISSUE: SPOUSAL MAINTENANCE

In his sixth and final issue, Michael argues the trial court abused its discretion when it awarded Robyn spousal maintenance.

#### A. Parties' Arguments

Michael contends that the "[trial] court did not make findings in either the Decree or its Findings of Fact . . . which support the award of court-ordered maintenance, as required by Texas Family Code Section 8.052." He insists that, given the decree's award to Robyn of "millions of dollars' worth of assets," the trial court could not have found that Robyn did not have the financial resources to provide for her minimum reasonable needs.

Robyn responds by reciting the trial court's express findings supporting the award of spousal maintenance and the evidence supporting both express and implied findings, and she contends Michael failed to show that the trial court's award of spousal maintenance was an abuse of discretion.

#### B. Applicable Law

A trial court may order spousal maintenance if "the spouse seeking maintenance . . . has been married to the other spouse for 10 years or longer and lacks the ability to earn sufficient income to provide for the spouse's minimum reasonable needs." TEX. FAM. CODE ANN. § 8.051; *accord Dalton v. Dalton*, 551 S.W.3d 126, 130, n.4 (Tex. 2018).

If the requesting spouse is eligible, the trial court determines whether to order maintenance "by considering all relevant factors, including . . . each spouse's ability to provide for that spouse's minimum reasonable needs independently, considering that spouse's financial resources on dissolution of the marriage." TEX. FAM. CODE ANN. § 8.052; *see Dalton*, 551 S.W.3d at 130.

## C.     Discussion

Because we are remanding the cause for a new just and right division based on the correct characterization of the properties, Robyn's financial resources on dissolution of the marriage may change. Thus, we must reverse the present spousal maintenance award so that the trial court may consider, based on its new just and right division, whether Robyn meets the statutory requirements for it to order spousal maintenance. *See Kelly v. Kelly*, 634 S.W.3d 335, 368 (Tex. App.—Houston [1st Dist.] 2021, no pet.) ("We therefore reverse the award of spousal maintenance to [Wife] and instruct the trial court to consider, after dividing the parties' marital estate on remand, whether [Wife] will lack sufficient property, including her separate property, on dissolution of the marriage to provide for her minimum reasonable needs, such that an award of spousal maintenance is appropriate."); *Roberts v. Roberts*, 402 S.W.3d 833, 841 (Tex. App.—San Antonio 2013, no pet.).

Michael's sixth issue is moot.

### CONCLUSION

We affirm the parties' divorce, but because the trial court mischaracterized some of the community property, and that mischaracterization was of sufficient magnitude to affect the just and right division, we reverse the trial court's division of the community estate and its award of spousal maintenance.

We remand the cause to the trial court for a new just and right division of the community estate—based on the correct characterization of the properties—and a corresponding reevaluation of any award for spousal maintenance.

Patricia O. Alvarez, Justice